The Chief-Justice
delivered the opinion of the court.
Appellants filed their bill in'equity against the appellees alleging that a certain lot of land had been donated and conveyed to certain persons who afterwards became the corporators, under the name of the appellants, as a corporation duly organized under the laws of this State; that the said land had been conveyed to them in trust for the purpose of establishing thereon a high school and town hall at Fort Reid in Orange county; that the said trustees, pursuant to the purposes of the donation, contracted with W. R. Roberts, a carpenter, to furnish materials and erect on said lot a school building, which contract was in writing and signed by the trustees and Roberts, for the sum of sixteen hundred dollars, to be fully paid on the completion and acceptance of the building; that payments were made to Roberts on account of the building as work progressed to the amount of $956.01, when notices were served on the trustees, and the corporate board of sundry liens claimed upon the building for debts contracted by the said Roberts on account of the building; that suits were brought after appellants took possession of the building, and liens have been duly established against it by judgments duly entered. That H. S. Sanford brought his suit for materials furnished ro Roberts, the contractor, against the trustees direeliy for the purpose of establishing a lien upon the building, and obtained a judgment. The amount of the several liens thus established, and tire names of the persons obtaining the judgments which had become liens, are set out ■ in a schedule annexed and referred to in the bill, as follows:
W. C. Ralphs (principal), $215.25; A. D. Stentiford, $76.60; W. F. Warren, $49.37; W. D. Freeman, $33.00; John Willy, $18.00; H. S. Sanford, $627.50; D. C. Savage, $21.00; amounting in all jto $1,040.70, besides some small claims not secured by lien amounting to $95.96.
The contract for the completion of the building called for $1,600, and the amount paid the contractor before notice of lien was $956.01, leaving unpaid upon the contract $643.79.
Although the bill is not very skillfully drawn, yet it-substantially presents the facts above collated.
The bill thus'shows that the liens for claims for lumber, materials, &c., established by judgments, were largely in excess of the amount due upon the builder's contract, and insists that it is not consonant with the legal or equitable rights of the parties that the owners of the building shall be made to pay m,ore than the contract price therefor, and complainants ask that the defendants, the leinors, be restrained from collecting more than the amount due the builder at the time of notice of the unpaid claims; that it be referred to a master to inquire and report as to the liens and the amounts due to the several creditors thereon; and that complainants have leave \o pay into the registry of the court the amount so found due in satisfaction.-of the several liens against the property, and for general relief.
The defendant Sanford demurred upon the grounds.
1. That there was no equity in the bill as to Sanford.
0. That the bill was multifarious, in ‘that it presented matters to which Sanford was a stranger, and in which he was not interested.
The court entered an order sustaining the demurrer and *48 the complainants appealed, and allege that the court erred in sustaining the demurrer.
The questions presented by the record are, whether, upon the case stated in the bill, the appellants are entitled to the relief prayed, and whether the bill is multifarious.
It is assumed upon the general allegations of the bill that the several lien's referred to were established according to law, this being expressly stated in the bill. The question then arises, whether the complainants* building against which the liens are alleged to exist, is liable to be sold to pay the whole amount of the several liens, or only the amount due from complainants to the contractor at the time of notice of the claims?
Liens of mechanics, laborers, material-mén and others, for’ work and materials employed in the construction of buildings) are created and regulated by statute. The acts of the legislature of this State, relating-to-the questions here presented, are the act of 1868, Ch. 1632, and the act of 1877, Ch. 3042, being acts to enforce this class of liens. These act's expiessly repeal all former acts inconsistent with them. [The act of Feb. 8, 1861, Chap. 1125, is not considered in determining this case.]
They (the acts of 1868 and 1877,) provide that mechanics and all other persons performing labor of furnishing materials for the construction or repair of any building, or for machinery, &c., may have a lien separately or jointly up oh the building, &c., for which they have .furnished materials of any kind, arid on the interest of the owner in the lot or land on which it stands, to the extent of the value of'-any labor done, or materials furnished, or for both. The third section of the act of 1868, as amended in 1877, provides that any such contractor, journeyman, or laborer em~ •ployed in the ¿obstruction or repair or furnishing materialó .for any building, mill, &c., may give notice to the owner thereof in writing* setting forth the amount of his claim, and that he holds the owner responsible for the same, and-the owner shall then he liable for such claim to 'the extent of the amount due from him io the employer at the time of notice, which may be recovered in action.
Section 4 prescribes the time and manner of filing and recording the notice of lien'in'the clerk’s office.
Section 5 authorizes any person having such lien to bring suit to enforce it within a certain time named.
The 6th section provides that in such actions all issues shall be made up and trials had as in other cases, and1 the court may, by the judgment, direct a sale of the lands and buildings for the satisfaction of the lien and costs, and such sale to be without prejudice to the rights of any prior incumbrancer, owner or other persons not. parties to the action.
The position of the appellants is correct, that in the absence of any fraud in the original contract or in'the-amount of payments made to the contractor at the time of notice of the lien mentioned in the third section, the owner or the building or lot. cannot be legally or equitably liable to pay more in satisfaction of the liens than the amount due from * the owner on the contract to the contractor. It is true the first section makes the property liable to the extent of the value of labor and material furnished, but this is qualified and limited by the third section to the amount due the contractor at the time of notice of lien, and the lien is therefore limited to that amount without regard to the amount due the laborer, mechanic or material-man from the contractor.
By the 6th section the court is directed to enter judgment and “direct a sale of the lands and buildings for the satisfaction of the lien and costs,” such sale to be without' prejudice to the rights of prior incumbrancers or others who are not parties to the Suit.
'The 7th section of the act of 1868 provided that when several claims had been filed and recorded against the same property, they should be satisfied in the order of priority oí suits and judgments, but this was repealed by the act of 1877.
By the 6th section of the act of 1868, all persons whose liens were recorded might be made parties in the suit to enforce liens, but this provision was also repealed in 1877, and we find no authority under the law as it stands for joining several lienors as parties in a suit at law to enforce such lien. Each claimant therefore may maintain his separate action for that purpose, and it is not practicable in any such suit to ascertain what amount of • such liens may be due to' any other than the plaintiff in each suit. It follows then that the- remedy of the owner of the property, in case the several lien judgments ariiount to a greater sum than the' amount due from the owner at the time the liens, attached, must go into a court having jurisdiction to inquire into the equities of the parties, to array the several liens and liabilities and to adjust them.
In the present case, the amount of the several liens already" in judgment, according to the allegations of the bill, is between ten and eleven hundred dollars, while the amount due'from the owner to the contractor was less than six hundred and fifty dollars.
It could not have been the intention of the law to compel the owner of the land to pay more than the price contracted to be paid for the erection of buildings upon it, there being no fraud or concealment as to the contract or payments.
The third section operates as a qualification of the first in respect to the extent of the lien, as fully as though it was annexed to it -as a proviso. Any other construction would compel the owner to pay all the laborers and material-men the whole amount of their claims, amounting, perhaps, to the entire contract price, after having paid his ■contractor the entire agreed amount and the full value of the building. The patent object of the proviso was to avoid such an unconscionable result.
The several liens having been established, according to the bill, and being in the aggregate so largely in excess of the actual liability of the owners, they must either submit to a great wrong or seek the only remedy at their hands, an adjudication of the amount for which their property .is actually liable to the several lien creditors, and the subjecting of it to sale unless sooner satisfied by payment of the amount- and the costs of the respective liens into the registry of the court. It is not apparent that the owners have any other means of saving their property from sacrifice, and the court has ample power to ascertain priorities, if any, of the creditors, and to distribute the fund equitably among them.
- The question of multifariousness, raised by the demurrer, is fully answered by the foregoing statement of the position of the parties. The defendants are each interested in the common fund to which they all look for such share as they may be severally entitled to, and substantial justice cannot be administered unless all such creditors are made parties.
The demurrer of the defendant Sanford should have been overruled.
The decree sustaining the demurrer is reversed and the cause is remanded with directions that complainants may. ' perfect service upon such of the defendants as have not been 'served with process or appeared, if they desire to do so;' that the parties have leave to amend the pleadings as they may be advised, and that such other proceedings may be had as may be agreeable to equity.