NEWGASS et al. v. ATLANTIC & D. RY. CO.

WESTERN UNION TEL. CO. v. THOM.

(Circuit Court, E. D. Virginia. May 3, 1894.)

1. RAILROADS—RECEIVERSHIP—PERFORMANCE OF CONTRACTS.

The A. Ry. Co. made a contract with the W. U. Tel. Co., by which it sold to the telegraph company a telegraph line which it had constructed along one of the branches of its road, and the telegraph company agreed to equip a telegraph line along the main line of the railroad and to operate the same regularly in the usual manner. It was provided that the contract should continue for 25 years from August 30, 1887, and that the railway company should pay for telegraph services rendered to it, at certain agreed rates, the accounts to be settled on August 30th in each year. The telegraph company paid for the line sold to it, constructed the line along the railroad, and rendered the services, as provided in the contract. On August 30, 1890, there was due to it from the railway company $797, and on January 3d following $258 more. On the latter date, the railroad was placed in the hands of a receiver, appointed in a creditors' suit, seeking, among other things, an account of all the debts and liabilities of the railway company. On May 30, 1891, the claim of the telegraph company against the railway company was recorded, as a lien, under the laws of Virginia. The receiver refused to pay the balance due to the telegraph company at the time

of his appointment, but, upon the telegraph company's claiming the right to discontinue the contract if its claim were not paid, he applied to the court for instructions. *Held,* that the telegraph company, if not paid, would have a right to discontinue the contract, and, since the exercise of such right would entail great inconvenience, loss, and mischief upon the railroad, with a probable violation of the Virginia statute forbidding the operation of a railroad without a telegraph line, the receiver should be directed to pay the balance due to the telegraph company.

2. SAME—LABOR CLAIMS—VIRGINIA STATUTE.

*Held,* further, that the claim of the telegraph company, for services rendered to the railway company, was a labor claim within the statute of Virginia (Code Va. §§ 2485, 2486) giving to laborers' claims priority over mortgages, if recorded within six months after the claims mature.

8. SAME—LIENS—LIMITATIONS.

*Held,* further, that the filing of the creditors' bill suspended the running of the six-months limitation for recording such claims, and, accordingly, that the claim for the balance, due August 30, 1890, four months before the filing of the bill, was a valid lien, though not recorded until more than six months after August 30, 1890.

This was a creditors' suit brought by B. Newgass & Co. and others against the Atlantic & Danville Railway Company. A. P. Thom, appointed receiver of the property of the defendant, filed a petition for instructions in respect to a contract with the Western Union Telegraph Company, to which petition the telegraph company filed an answer.

Robt. M. Hughes, for Western Union Tel. Co.

Richard Walke, for Atlantic & D. Ry. Co.

HUGHES, District Judge. The Atlantic & Danville Railway Company had constructed, some years before its road came into the hands of the receivers of this court, a branch road from Claremont, on James river, to Hicksford, in Brunswick county, Va., and had put up telegraph poles and wires, and equipped a telegraph line on that branch. In August, 1887, a few years before the bill of foreclosure was filed in this court, it entered into a contract with the Western Union Telegraph Company by which it sold and conveyed this telegraph line, with all poles, wires, batteries, and material, to that company, for an agreed price, of which it duly received payment. By the same contract the telegraph company agreed to put up telegraph poles and wires, and equip a telegraph line along the main route of the railroad from Portsmouth to Danville, and on other branches of the railroad, and to operate the several telegraph lines regularly in the usual manner. A variety of stipulations were inserted in the contract. Among others is one by which the railroad company grants, as far as it may be competent for it to do so, the exclusive right of constructing and operating a telegraph line along the railroad. Another stipulation is that this contract shall continue in force for 25 years from its date, which was the 30th of August, 1887, and on, until after notice given to the contrary by either party to the other. The contract also defined the rates at which the railroad company should pay for the telegraph services rendered to it, and that the settlement of accounts arising out of these services and charges should be made at the end of each fiscal year, ending on

the 30th of August. The telegraph company duly complied with the requirements of the contract by establishing telegraph lines along the roads of the railroad company and by keeping them in operation. On the 30th of August, 1890, there was due the telegraph from the railroad company $727.52, and on the 3d of January, 1891, an additional indebtedness of $258.38 had accrued,—making the debt of the railroad company at the latter date $985.90. The Atlantic & Danville Railway Company was placed in the hands of receivers by this court on the 3d of January, 1891, on a creditors' bill praying the appointment of receivers and a sale in foreclosure. There were, at first, two receivers. There is now but one. The claim of the telegraph company was recorded as a lien in the clerk's office of the hustings court of Portsmouth, on the 30th day of May, 1891. In July, 1891, the receivers of the Atlantic & Danville Railway filed a petition or report in this cause, representing that they are advised they have no authority to pay the claim of the telegraph company, which has been described, inasmuch as it does not, in their opinion, constitute a lien upon the property of the railroad company. They also represent to the court that the telegraph company claims the right, in case the claim is not paid, to discontinue and annul the contract, and to refuse to perform further service to the railroad, and threatens to exercise that right. The receivers, in their petition, deny such right, holding that the telegraph company is bound to go on with the contract. They therefore pray the instruction and direction of the court in the premises. The telegraph company answers, representing that the contract is a continuous one, which has many years to run, and claiming the right, though disclaiming any such desire, to terminate the contract entirely, if the receiver, acting for the railroad company, should violate the contract by refusing payment of the debt which stood in arrears when he took charge of its property. It also claimed that the debt is a lien upon the railroad property superior to that of the mortgage.

The case presented is novel. I find nothing like it in any of the reporters. The one seeming most to resemble it is that of Southern Exp. Co. v. Western N. C. R. Co., 99 U. S. 191. But the distinction between that and the one at bar is quite marked. There the express company had entered into a contract with the railroad company, under which it had advanced to the latter a sum of money, to be expended in repairs and betterments on the road, and was to be repaid by the earnings of the railroad in carrying express freights. Some year or more afterwards, the railroad company conveyed its property by trust deed to secure creditors, and, some time after that, a bill was filed against the railroad company, praying for a receiver and for a sale in foreclosure. At the time of the appointment of the receiver, a balance of the debt of the railroad to the express company remained unpaid. The receiver deemed this debt to be of inferior dignity to the debts of the trust, being unsecured by lien in any form upon the property in his hands. He therefore declined to go on with the contract with the express company, and the latter brought a bill for specific performance of the

contract against the receiver. The supreme court of the United States held that the contract could not be carried on by the receiver, the express company's rights being subordinate to those of the cestuis que trustent under the trust deed. That case, obviously, differs materially from the one at bar. There the receiver resisted the further execution of the contract. Here the receiver comes into court praying for leave to go on with the contract, and protesting against the right of the telegraph company to annul it. There it was beyond the ability of the receiver, with respect to the superior rights of lien creditors, to go on with the contract. Here, unless the receiver continues to fulfill his part of the contract, great injury to the interests of all creditors of the railroad and to the public, attended by a breach of the law of Virginia forbidding any railroad to be operated except in conjunction with a telegraph equipment, would result. For it cannot be contended that, if the receiver should be authorized by the court to violate his duty under the contract, the telegraph company would not be at liberty to abandon it on its part. The contract in the case of the express company had terminated, except as to payment of the amount due, when the receiver took charge. The contract here is an entirety, and is continuous, having 15 or 20 years yet to run. It is a beneficial contract to the receiver, which he asks the court to continue in force, and from which he protests that the telegraph company shall not be released. The case seems to me, therefore, to be essentially different from that of Southern Exp. Co. v. Western N. C. R. Co., *supra*; and, so far from being all fours with, is the opposite of, it in its leading features.

I think the case turns, however, upon other points than those which have been adverted to. There are serious difficulties in the way of denying the claim of the Western Union Telegraph Company under consideration. Though it is hardly presumable that this company would exercise its own right of canceling this contract, if the receiver should violate it on his part by refusing to pay the amount in arrears due under it, yet that right, as before indicated, would certainly exist; and, if enforced, would entail the utmost inconvenience, loss, and mischief upon the railroad, involving a breach of section 1257 of the Virginia Code, forbidding any railroad from being operated in the state without a telegraph line. It would, therefore, be in the highest degree impolitic for the court to direct the receiver to repudiate this debt, and as hazardous to the interests of the mortgage creditors of the railroad company as to those of all others concerned. In the case of Skiddy v. Railroad Co., 3 Hughes, 320–381, Fed. Cas. No. 12,922, this court, on mere grounds of policy, decreed the payment of a large amount of labor claims in prejudice of mortgage liens, long before the priority of such claims was established by the equity courts of the country, and by statute. Policy requires, in this case, like action by the court.

The receivers, in their petition, deny that this claim of the Western Union Telegraph Company is a lien ahead of that of the lien creditors. Whether it is or not depends, in part, upon the question

whether a telegraph company, rendering services to a railroad company, is a laborer, within the intent and reason of sections 2485 and 2486 of the Virginia Code, which give labor claims priority over mortgages, if recorded within six months after the claims mature. Telegraph services are probably more important to the safety of persons and property carried on the trains of railroads than those of any other class of railroad operatives, and their superior importance is emphasized by the statutory requirement that trains shall not be run at all except under their protection. I cannot entertain a doubt that the telegraph company, attached by law to every railroad in Virginia, is a laborer, in the meaning and reason of the statute of Virginia giving laborers' claims priority over mortgages. Being a labor claim, did it become a lien on the property in the hands of the receiver superior to the lien of the creditors secured by deed? As to the smaller item of $258.38, which became due either on the filing of the bill on the 3d of January, 1891, or on the 30th of August next following that event, it was equally in time, having been registered on the 30th of May, 1891. As to the larger item of the claim, namely, that of $727.90, the grounds on which it rests are different. It became due on the 30th of August, 1890, rather more than four months before the filing of the bill in this cause; and whether it ranks as a lien or not depends upon the question whether the filing of the bill operated to stop the running of the six-months limitation against it, prescribed by the Code of Virginia.

The bill in this case is a creditors' bill, brought to administer the assets of an insolvent corporation. Its prayer, among other things, is that an account be taken of all the debts and liabilities of the Atlantic & Danville Railway Company, the liens upon its property, and their priorities, and any and all other just and proper accounts that may be ordered. This makes it, in substance, a creditors' bill, and the law is well settled that, in such a case, the statute of limitations ceases to run, not at the date of the decree of reference, but at the date of the filing of the bill. Every creditor has, after the filing of the bill, an inchoate interest in the suit, to the extent of his claim being considered a demand, and to prevent his being shut out because he had not obtained a decree within the period of limitation. The authority on which this doctrine is based is the leading case of Sterndale v. Hankinson, 1 Sim. 393, and it is settled, beyond all controversy, for the federal courts, by the case of Richmond v. Irons, 121 U. S. 29, 7 Sup. Ct. 788. See pages 52–54, 121 U. S., page 788, 7 Sup. Ct., which discusses the whole question, and quotes the case of Sterndale v. Hankinson with approval.

I am of the opinion, therefore, that the lien of the Western Union Telegraph Company is superior to that of the creditors under the mortgage deed. I will sign a decree directing the payment of the claim by the receiver for several reasons: (1) Because not to pay it would be a breach of a beneficial contract which the receiver wishes to be continued, and which the telegraph company is continuing to execute in good faith on its part; (2) because not to pay it would entitle the telegraph company to throw it up, entailing great inconvenience and loss to the receiver, and all interests rep-

re enented by him, and the probable breach of a statute of the state of Virginia; (3) because the payment of it, and the maintenance in all respects of the contract of which it is part, would be for the best interests of all parties to this suit, and especially of the lien creditors; and (4) because it is a valid lien in favor of laborers under the law of Virginia, having priority, as such, over the claims of the creditors under the mortgage deed.