LITTLE ROCK, HOT SPRINGS & TEXAS RAILWAY COMPANY

*v.* SPENCER.

Opinion delivered April 2, 1898.

RAILROAD—MECHANIC'S LIEN ACT—CONTRACTOR.—Under the statute providing that "every mechanic, builder, artisan, workman, laborer, or other person, who shall do or perform any work or labor upon, or furnish any materials, machinery, fixtures or other thing toward the equipment, or to facilitate the operation of any railroad, shall have a lien therefor upon the roadbed," etc. (Sand. & H. Dig., § 6251), a contractor who furnishes the labor and appliances to build the roadbed of a railway, and pays for the same, but does not personally labor or work upon such roadbed, is not entitled to a lien thereon. (Page 186.)

Appeal from Garland Chancery Court.

LELAND LEATHERMAN, Chancellor.

*Cockrill & Cockrill*, for appellants.

Sand. & H. Dig., § 6251, creates a charge against property without the assent of the owner; and it must be strictly construed. 54 Ark. 522, 525; 51 Ark. 309, 315; 27 Ark.

564; 42 S. W. 1147; 43 Ark. 168; 59 Ark. 81, 84. The statute applies only to those who themselves "do or perform work or labor;" and it cannot be construed to include contractors who do not perform any of the work themselves, but simply act through others. 90 N. Y. 213, 218–19; 39 Mich. 594; 27 Mo. 39; 49 Ga. 506, 511, 512; 3 Wash. Ter. 444; 1 Jones, Liens, 725; 4 Watts & S. 257; 14 How. 434; 3 L. R. A. 549; 16 Wis. 72; 43 Ark. 168; 2 Mont. 443; 41 Me. 397; 81 N. C. 340; 12 Bush, 75. Appellees cannot assert a lien as assignees of the claims of those who did the work, because: (1) Under the laws of Arkansas such liens are not assignable. 31 Ark. 597; 27 Ark. 564; 31 *ib.* 561, 566; 39 *ib.* 344; 52 *ib.* 58, 60; 18 *ib.* 142. (2) Those who did the work had no lien, because they were not in privity with the railway company. 59 Ark. 81. The contract of appellees was made with an agent acting for an undisclosed principal. Their election to hold the agent is conclusive, and discharges the principal. 60 Ark. 66; 16 Ark. 477; Mechem, Agency, § 698; 54 N. H. 561, 573. The burden of proving the agency was on appellees, and, failing in this, their case fails. Mechem, Ag. §§ 706, 289.

*Greaves & Martin* and *Rose, Hemingway & Rose,* for appellees.

One who contracts with a railroad company to build part of its road, and does build it, is a "builder," within the meaning of the act of 1887, and, as such, entitled to a lien. Sand. & H. Dig., § 6251. For definition of "builder," see Anderson's Law Dict. p. 146; Standard Dict. 749; 1 Century Dict. p. 712; 49 Ga. 511. Statutes are to be so construed as to give effect and meaning to every word, if possible. 11 Ark. 44; 17 Ark. 608, 651; 46 Ark. 159, 163. A *contractor* is a "builder." 41 Fed. 551, 553; 12 Mont. 344; 52 Fed. 241, 244, 245; 3 Ct. Cl. 297, 304; 71 N. Y. 413; 27 Mo. 39; 49 Ga. 511; 3 Wash. Terr. 444; 14 How. 434, 444; 39 Mich. 594, 595; 49 Wis. 169; 27 Mo. 39; 12 Mont. 344; 23 Ark. 327; 104 U. S. 176. The statute, even if we grant a strict construction, must be so construed as not to render meaningless the words that are found in it. 11 Ark. 44; 17 *ib.* 608, 651; 46 *ib.* 159, 163. But such statutes should be so interpreted as

to secure the classes named in the act.  32 Ark. 69; 104 U. S. 177; 94 U. S. 545.  Words are to be construed according to their ordinary and natural meaning.  47 Ark. 404, 406. Accepting benefits of a contract ratifies it.  Mechem, Agency, § 148; Story, Ag. § 253; Wharton, Ag. 89; 10 Wend. 271; 40 N. E. 328; 12 Wall. 681; 54 N. W. 592; 44 N. E. 97; 24 S. W. 252.  The general rule of law is that a principal is liable on all contracts made by the agent acting within the scope of his authority, and the presumption is that the intention was to bind the principal.  1 Am. & Eng. Enc. Law (2 Ed.), 1137; Mechem, Ag. 558; 44 N. Y. 349.  The burden is on the principal to show that credit was given exclusively to the agent.  44 N. Y. 349; 1 Am. & Eng. Enc. Law (2 Ed.), 1138; 68 N. Y. 400; 15 Wend. 498.  It was competent to show that the one who made the contract did so as an agent.  62 Fed. 112; L. R. 6 C. P. 486, 498; 116 Mass. 398; 78 N. Y. 580; 64 N. Y. 357, 363; 134 Mass. 169; 1 Wall. 234, 241, 242; 116 U. S, 671, 680; 21 How. 287; 12 Atl. 646; 14 Kas. 557; Story, Agency, § 154; Mechem, Agency, §§ 446, 449; 33 Ark. 107, 113; 14 Kas. 557; 14 Ill. App. 141.  Acceptance by appellants of the work done under the agent's contract estops them to deny his authority.  Story, Ag. § 253; Mechem, Ag. § 148; Wharton, Ag. § 89; 84 Fed. 80, 83.

HUGHES, J.  This is an appeal from a decree in chancery declaring a judgment a lien upon the roadbed, etc., of the appellant railway.  The judgment was for an amount due for building a part of the road.  The lien was decreed under the following statute: "Every mechanic, builder, artisan, workman, laborer, or other person, who shall do or perform any work or labor upon, or furnish any materials, machinery, fixtures or other thing toward the equipment, or to facilitate the operation of any railroad, * * * shall have a lien therefor upon the roadbed, buildings, equipments, income, franchises, and other appurtenances of said railroad," etc.  Sandels & Hill's Digest, § 6251.

It is contended by the railway company that the appellees made no contract with it, but contracted with one Nelson (as

agent for whom it did not appear), and that Nelson was not authorized to contract for the company. Without discussing the evidence in this behalf, suffice it to say that we find from it that this contention is not maintained, and that there was a contract made by the company, through its agent, Nelson, for the building of that part of the road for building which the appellees claim that the railway should pay. It appears from the evidence that the appellees had the work done as contractors, that they furnished the labor and appliances necessary for the work, and paid for the same; but it does not appear that they personally did any labor or work upon the railroad.

Were they entitled to a lien upon the road, under the section of the statute quoted?

It is not an easy undertaking, frequently, to distinguish between the kind of work and labor which is entitled to a lien, and that which is mere professional and supernumary employment, and not fairly coming within the meaning of the terms used in the statute. It has been held that an architect who furnishes plans and superintends the erection of a building acquires a lien thereon as for work and labor. *Stryker* v. *Cassidy*, 76 N. Y. 50; *Mut. Benefit L. Ins. Co.* v. *Rowand*, 26 N. J. Eq. 389.

In determining the question under consideration, it is important to look closely to the act of the legislature, and to consider the policy of such legislation and the intent of the legislature in passing the act in question. The act is entitled "An act to protect employees and other persons against railroad companies." It will be observed that the act gives a lien only to such a mechanic, builder, artisan, workman, laborer, or other person, *who shall do or perform any work or labor* upon or furnish any materials, machinery, fixtures or other thing toward the equipment or to facilitate the operation of any railroad," etc. We emphasize the words "who shall do or perform any work or labor."

In *Balch* v. *N. Y., etc., R. Co.*, 46 N. Y. 521, it is held that "the term 'laborer' cannot be construed as designating one who contracts for and furnishes the labor and services of others, or one who contracts for and furnishes one or more teams for work, whether with or without his own services, or

the services of others to take charge of the teams while engaged in the service." *Gurney* v. *Atlantic, etc., R. Co.*, 58 N. Y. 358; *Aikin* v. *Wasson*, 24 N. Y. 482. In the *Lehigh Coal & Nav. Co.* v. *Cent. R. Co.*, 29 N. J. Eq. 262, it is held that the right of preference under such a statute "is personal, inhering alone in the person who actually performs labor or service."

Section 6251 of the digest, above quoted, was intended to secure and protect only the personal earnings of laborers, mechanics, builders, artisans, workmen, or laborers, or other persons who do or perform any work or labor upon any railroad, or furnish any material, machinery, fixtures, or other things toward the equipment, or to facilitate the operation, of any railroad. It does not apply to a contractor who does not actually perform any work or labor. So far as he may actually labor, he may come within the scope and meaning of this statute. That the purpose of this statute was to give a lien to those named in it for the work and labor by them actually performed is apparent. But its provision is limited to such as actually perform work or labor. They are usually poor men, dependent on their daily earnings, and can ill afford to lose this, or indulge in the uncertainties of litigation. The employer or contractor is, as a rule, just the opposite, and, for this reason, the object or purpose of a lien law for one by no means makes an argument for the other. *Mohr* v. *Clark*, 3 Wash. Ter. 440; *Aikin* v. *Wasson*, 24 N. Y. 482. "The right conferred by a lien in favor of laborers is personal, and cannot be availed of by one who furnishes labor." 2 Jones, Liens, § 1630.

Considering the language of the statute and the purpose of its enactment, we are constrained to hold that the judgment and decree in the case, in so far as it declares a lien upon the roadbed, etc., of this railway, is erroneous.

So much of the decree of the chancery court as declares a lien upon the roadbed, etc., of the appellant railway is reversed, and, as to this, the cause is dismissed. In all other respects the decree is affirmed.

WOOD, J., (dissenting.) First. I insist that, as the law now stands, neither the day-laborer upon, nor the contractor and builder of, uncompleted railroads has any lien. Let us

see.   In *Tucker* v. *Railway Co.*, 59 Ark. 81, the plaintiff, Tucker, sued the company, setting up in his complaint that "he was a *laborer and contractor* under one Wilson, who had taken a contract from the company to clear off and grub the right of way, and grade its branch road about one mile in length; *and as such performed work* amounting to the sum of $317.90, of which Wilson paid him $150, leaving the balance sued for as aforesaid"—concluding with the formal prayer for judgment, lien, etc.   The cause was heard upon demurrer to the complaint, and this court, in affirming the ruling of the lower court sustaining the demurrer, placed its decision upon the following grounds:   First, that the statute itself, in such cases, gives the limit beyond which the right to a lien does not exist; that the allegations of the complaint show plaintiff to have been a sub-contractor, and, as such, he was not specifically named in the statute as one of the beneficiaries."   "Secondly, there must be a privity of contract between the parties (plaintiff and defendant), otherwise there can be no right of action in the one against the other."   The allegations of the complaint showed Tucker to have been a sub-contractor; they also showed that he was a *"laborer, and as such performed work and labor."*  So that, on demurrer, while Tucker was not entitled to a lien as a sub-contractor, not being specifically named as such in the statute, he *was* entitled as a laborer or workman who performed *work and labor*, for the statute expressly mentions such. Therefore, the distinctive ground of the decision in *Tucker* v. *Railway Co.* was that there was no privity of contract between the plaintiff, Tucker, and the defendant company.   In the case at bar this court says:   "Section 6251 of the digest, above quoted, was intended to secure and protect only the personal earnings of laborers, mechanics, builders, artisans, workmen, or laborers, or other persons who do or perform any work or labor upon any railroad, or furnish any material, machinery, fixtures, or other things toward the equipment, or to facilitate the operation, of any railroad.   It does not apply to a *contractor* who does not actually perform any work or labor.   *   *   *   The right conferred by a lien in favor of laborers is personal, and cannot be availed of by one who *furnishes* labor."

In *Tucker* v. *Railway  Co.*, *supra*, Judge Bunn, speaking

for the court, says: "It is a matter of common knowledge, and of the current history of the times, that the act of 1887 was passed to prevent the worthy, and in many respects defenceless, classes of persons named therein from being deprived of the fruits of their labor." And Judge Hughes, for the court, in the present case, says: "That the purpose of this statute was to give a lien to those named in it for the work and labor by them actually performed is apparent. * * * They are usually poor men, dependent on their daily earnings, and can ill afford to lose this, or indulge in the uncertainties of litigation. The employer or contractor, as a rule, is just the opposite, and, for this reason, the object or purpose of a lien law for one by no means makes an argument for the other." After all this, one would naturally expect, in the "round-up" of decisions, a construction that would secure to these "worthy poor and defenceless classes" a lien for their labor. As strange as it may seem, such is not the case at all. The judges (except Judge Battle) hold that the statute applies to non-completed as well as to completed railroads. Every one knows that railroads are constructed through contractors or builders, who take the contract, and do the work, not literally with their own hands, for that would be impossible, but through mechanics, artisans, laborers and workmen, whom the said contractors or builders employ. There is no privity of contract between these laborers and the railway company. Then, under the decision in *Railway Co.* v. *Tucker, supra,* how are they to secure the lien which the court says was the purpose of the law to give them? But that is not so bad. I assented to *Tucker* v. *Railway Co.* There are strong reasons for the position there taken, and that the act only applies, as held by Judge Battle, to completed railroads. But little, if any, harm would result to laborers, etc., upon non-completed railroads under *Tucker* v. *Railway Co.,* because these, who generally work by the day, are usually paid off by the contractor or builder, and, if not, it is within their power to protect themselves from heavy loss by ceasing to work at any time they choose if their daily wages are not paid. Then, too, laborers, workmen, etc., for completed railroads usually have privity of contract with the company. No, be it understood, that I have

no objection whatever to the decision in *Tucker* v. *Railway Co.;* and if the present law were construed to embrace contractors, who are really the ones who need it most, *Tucker* v. *Railway Co.* might still stand. But, in order to preserve consistency in the law and in deference to the last announcement by this court, which must be received as the law, I am willing for *Tucker* v. *Railway Co.* to be overruled. And I have protested, and do now, most earnestly, that, in order that the present decision be not shorn of its power to secure those whom this court designates as a "worthy but defenceless class," who work and labor upon non-completed railroads, in the lien which the court declares was the purpose of the law to secure to them, *Tucker* v. *Railway Co.* should be overruled, and must be, before any practical results can come to them.

Second. But to my mind the worst feature of the present inconsistent state of the law is that, not only is the laborer deprived of his lien, for lack of privity as we have shown, but likewise the contractor or builder; because, according to the construction here given the act, the contractor is nowhere included within its provisions, except for his own personal labor. I submit that this construction is erroneous, for the following reasons:

1. In arriving at the intention of the legislature, consideration should be given to the act as a whole. The conclusion reached by the court that the legislature intended to provide the laborer and workman a lien, because they are "usually poor men, dependent on their daily earnings, and can ill afford to lose this, or indulge in the uncertainties of litigation," and the deduction that the legislature did not intend to provide a lien for the employer or contractor, who is, as a rule, just the opposite, are, both alike, in the light of the whole act, illogical and unsound. Had the act only named "laborers," or a class who only labor in person, there would have been reason for such a conclusion. In the olden times, when the policy of such legislation was to provide for those only who were supposed to need the especial protection of the sovereign, statutes were passed giving a lien to "laborers," "servants," or "apprentices," thus designating a class who only labor with their own hands, and are usually poor. Hence, we find decis-

ions, based upon such statutes, declaring the purpose of such laws to be the protection of this "worthy but defenceless class." We are not surprised, therefore, on turning to the decision from which the court takes its quotation declaring that the purpose of our statute was to protect mechanics, builders, artisans, laborers and workmen only to the extent of the *actual manual labor performed by them*, to find that it was just such a decision, based on a statute which gives a lien only to "any person who shall do labor upon any farm or land." Of course, every one knows that a statute intending to give a lien to a man who labors on a farm, a farm hand, was intended to be personal, but builders and contractors do not usually or necessarily do their work in person. The court in the very decision points out the distinction where it says: "There is a clearly defined line between the contractor, the employer, and the laborer, and although each may labor in his own way, the class to which the laborer belongs is plain, and the contractor or employer certainly does not come within it." See the case *Mohr* v. *Clark*, 3 Wash. Ter. 444.

But the enumeration of the various other classes, to-wit: mechanics, builders, artisans, material furnishers, and those sustaining loss and damage, shows that the intention of our legislature was not to provide a lien for laborers and workmen, because they are "usually poor and dependent upon their daily earnings," but because they, like the various other classes named, have contributed to the value of the finished product— the railroad—upon which the lien is given. The comprehensive enumeration of the statute convinces me that the legislature intended to give a lien to all those whose work and labor done upon, or materials furnished for, had enhanced the value of the railroad. As was said by Judge Andrews in *Stryker* v. *Cassidy*, 76 N. Y. 50: "Mechanics' lien acts were originally enacted for the especial protection of this class of persons [laborers], but their scope has been greatly extended. * * * The general principle upon which the lien acts proceed is that any person who has contributed by his labor, or by furnishing materials to a structure erected by an owner upon his premises, shall have a claim upon the property for his compensation." *Avery* v. *Clark*, 25 Pac. (Cal.) 919; 15 Am. & Eng. Enc. Law,

7; Phillips, Mech. Liens, § 35; *Cullins* v. *Mining Co.*, 2 Utah, 219, 222. That eminent jurist, Judge Caldwell, who knows as much as, and perhaps more than, any one else in the state of the history and purpose of this law, says: "It covers nearly or quite all the liabilities of the company in this state." *Central Trust Co.* v. *Ry. Co.*, 41 Fed. Rep. 551, 553.

Surely, there are no more meritorious liabilities of the company than the debt due the builder of the roadbed, the substructure, so to speak, of the whole institution.

It is inconceivable to me that the legislature should have intended to provide for the contractor who might furnish cross-ties, timber, lumber, stone, iron, engines and cars, all to go upon and over the roadbed, and not give a lien also to the *contractor* who had furnished the roadbed itself. The contractor who furnishes the various appointments incident to the building of roadbeds for railroads, such as teams, wagons, barrows, shovels, scrapers, axes, picks, etc., and the men to use them, is no less deserving of protection, and no more able to protect himself, than the "Iron Barons," "Steel Kings," and "Rolling Stock Magnates," who are given a lien under this law. The legislature that would make a discrimination at once so unjust and unreasonable would, in the very act, lay at its door an impeachment for besotted ignorance or gross partiality. Ours cannot be justly convicted of either in the present enactment, for the spirit of the law shows an intention to provide for the contractor who builds the roadbed, and the very letter shows that this intention was carried out under the term "builder."

2. If the contractor who builds the roadbed of a railroad is not provided for under the term "builder," as used in the act, or in the words "other persons," then he is not provided for at all. As we have seen, we would naturally look for some provision for his benefit in an act of such broad sweep as that under consideration, and an act making no provision for him would certainly be out of the trend of enlightened modern legislation upon the subject; for, as is said by a distinguished author: "The party most generally secured is the contractor." Phillips, Mech. Liens, § 40. And by another: "At the present day statutes generally allow a lien to contractors, either by express terms or necessary implication." Boissot, Mech. Liens,

§ 218.   Now, what is the most natural and obvious import of
the term "builder," as used in the statute?   Mr. Webster de-
fines the word "build" as follows:     "To erect or construct, as
an edifice or fabric of any kind; to form by uniting materials
into a regular structure; to fabricate; to make; to raise."   As
defined by literary and law lexicographers, "builder" is "a per-
son whose business is to construct buildings, vessels, bridges,
canals, or railroads, by contract.   See contractor."   And. Law
Dict. p. 146.   "One who builds; especially, one who follows the
occupation of building, or who contracts or directs the actual
work of building."   Stand. Dict. 249.   "One who builds, or
whose occupation is that of building; specifically, one who
controls or directs the work of construction in any capacity.
*In the practice of civil architecture, the builder comes between the
architect who designs the work and the artisans who execute it."*
I. Cent. Dict. 712.   Civil architecture is the art or science
of building various structures "for the purposes of civil life."
Webst. Dict. verbo, "Architecture."   We are talking about road-
beds for railroads; that is a structure used for purposes of civil
life.   What reason is there for saying that the builder
thereof is not the one who comes between the civil engineer
who designs and lays off the work and the artisans who exe-
cute it?   None whatever.   On the contrary, there is every rea-
son why we should adopt the meaning of the word as used in
*building terminology*.   We are strictly within the domain of
*civil architecture*, where the commonly accepted meaning of the
word "builder" is as stated above.   If I were to ask any of
my brother judges, or the learned counsel for appellants, "who
built their houses or was the builder thereof," none of them
would think of naming the various carpenters, masons, gla-
ziers, painters, etc., who might have been employed to work or
labor upon the same, but each would answer, giving the name
or names of some of the numerous contractors or builders in
the city who took the contract, and built their houses.   So, too,
if I were to ask any railroad official, or any one else acquainted
with the facts, "who built the roadbed of the Little Rock, Hot
Springs & Texas Railway," none of them would think of giv-
ing the names of the numerous negroes, Irishmen, or Ameri-
cans, who grubbed the way, dug the ditches, threw up the em-

13

bankment, etc., but every one would give the names of Spencer and Manney, and such other contractors as made the contracts, furnished the necessary means, men and implements, and had the different sections of the roadbed built. These were the *real builders* of the roadbed. The men in their employ to do the work were simply laborers or workmen who worked upon same, but they were not the builders thereof.

Again, the word "builder" has been used, by lawyers, judges and courts, as synonymous with "contractor," when used in connection with construction or building contracts. This, too, without exception, so far as I know. Mr. Anderson thus defines "Contractor:" "One who agrees to construct a portion of a work, as a railroad," and as we have seen, he defines "builder" as "one whose business it is to construct   *   *   *   railroads." See Anderson's Law Dict. *s. v.* "Builder" and "Contractor." In *Gray* v. *Walker*, 16 So. Car. 143, where a contractor sought to establish a lien, he is designated by the reporter (Shand) in the syllabus only as a "builder." So likewise in *Parker* v. *Bell*, 7 Gray, 429, and *Weeks* v. *Walcott*, 15 Gray, 54. In Mr. Lloyd's work on "Law of Building and Buildings," "builder" and "contractor" are used interchangeably, and "builder" is used only in the sense of "contractor." See pp. 45, 54, 55, 82, 83, 84, 85.

In *Calkin* v. *U. S.*, 3 Ct. Claims, 297, under a statute giving a lien for a debt contracted by the "builder" of any ship or vessel, it was held that the man who contracted with the owner for the building of the ship or vessel was the "builder" thereof.

A statute of Montana is as follows: "Every mechanic, builder, lumberman, artisan, workman, laborer, or other person or persons that shall do or perform any work or labor upon, or furnish any materials, etc., shall have a lien for his work or labor done, etc." Exactly like ours. One Wortman contracted with Kleinschmidt to build a granite block (which, of course, he could not do in person) for $26,710. After completing the work, Wortman sued Kleinschmidt for a balance due on his contract, and asked for a lien under the statute. Kleinschmidt contested the claim, and denied the right of Wortman to a lien, as is shown by the following excerpt from the opinion of the court: "Kleinschmidt by his pleadings and testimony asserted

that Wortman was not entitled to recover any amount, and that if judgment were entered against him *the law would not authorize the creation of a lien upon his property to secure its payment.*" The court, in discussing the question, calls Wortman a "builder," and, after deducting a certain amount from the claim for extras, which it refused to allow on account of a failure on part of Wortman to comply with his contract as to these, allowed the balance which it found to be due under the contract, and declared a lien to exist for same, saying: "The respondent is entitled to a lien upon this property under the statutes to secure the payment of the sum which is due from Kleinschmidt." And one of the judges, in a separate opinion, in which he concurred with the court as to respondent's right to a lien under this statute (but dissented as to other points), said: "Taking the definitions, both literary and legal, it is plain that, in reference to a building and the law of building, a 'builder' is practically in effect a 'contractor.' " The case is precisely in point. *Wortman* v. *Kleinschmidt*, 2 Mont. 316.

Under a statute of New York (Laws of New York, 1862, p. 956), giving a lien on vessels for a debt "contracted by the master, owner, charterer, *builder*, or consignee, on account of work done or materials furnished," J. S. Pierce & Co., a firm of boat builders, *contracted* with the owner of a certain vessel to repair same. They procured certain castings and machinery from another, and had the work done. The court of appeals, in allowing a lien to the one who had furnished materials and done work upon the vessel, says: "It is quite apparent that Pierce & Sons were the *builders* of the canal boat, within the meaning of the acts of 1862." So I conclude that the word "builder," as used in our statute, is tantamount to "contractor." I dare say no case can be found, where the word "builder" is similarly used in the statute, that holds the contrary. The court cites none, counsel for appellants cite none, and from this fact (with their known ability for exhaustive research), I feel warranted in saying *there are none.* The only one they cite where the word builder is similarly employed is *Blakey* v. *Blakey*, 27 Mo. 39, and they say that case holds that "the contractor had no lien," and cite *Savannah & Charleston R.* v.

*Callahan*, 49 Ga. 506, and *Mohr* v. *Clark*, 3 Wash. Ter. 444, "to the same effect."

A brief review of *Blakey* v. *Blakey*, *supra*, will discover that, instead of being an authority against my contention, it supports it. The syllabus is: "Where a builder contracts to build a house, he can have no lien for services rendered in superintending his own men." Here the "contractor" is called "builder." The facts of the case were that plaintiff sought to establish a lien for materials and for work done by different carpenters for a certain number of days at $2.50 per day for each hand in building a house for defendant, and also for *114 days service of self* in working and superintending the building from May 1st up to 23d of December, 1856, at $3 per day $342." The defendant asked this instruction: "That the plaintiff is not entitled to recover in this action for superintending the work in the building." In holding this to be a correct instruction, the court says: "It appears that the workmen were employed by the plaintiff as his hands, and that, instead of charging a given sum for the work, he charged the defendant $2.50 for every day each workman was engaged, though he did not pay any of them that much. If the plaintiff contracted to build the house for a certain price, or for whatever the job might be worth, it is difficult to understand on what principle he could charge the defendant for superintending his own hands; and if he undertook to employ workmen for the defendant, and to superintend them, he ought not to be paid for services as superintendent, and to speculate at the same time on the wages of the workmen." Continuing, the court says: "The law gives the mechanic, builder, etc., who may do or perform any work upon or furnish material a lien for the work done and materials furnished, but * * * it cannot be stretched to cover, *besides the value of the work done and the materials furnished, a claim for services performed by the builder for himself in superintending his own workmen.*" The legitimate conclusion from this is that the contractor, called in the opinion *builder*, would be entitled to a lien for the value of *the work done by the hands in his employ* according to his contract; but not for personal services in merely superintending them. This latter was but a part of his undertaking, for which

he received pay when the work done by the men in his employ was paid for. This, it seems to me, is cogent authority for my position. There is no pretense that the claim of Spencer & Manney is for personal services rendered by them; it is only for the contract price of the section of roadbed built by them through their employees.

A brief analysis of the *Savannah & Charleston R. Co.* v. *Callahan*, 49 Ga. 506, cited for appellants, will likewise discover a [strong authority for appellee. Plaintiffs, who contracted for building, and had built, a certain portion of a railroad, sought to establish a lien for the balance of the contract price. The defendant "denied that the plaintiffs had any lien as *mechanics and laborers*, in contemplation of the law, but alleged that they were contractors." The constitution of 1868 of Georgia declares that "mechanics and laborers shall have liens upon the property of their *employers* for labor performed or materials furnished." The statute of 1869, providing a summary remedy for enforcing these liens, prescribed: "*Laborers and mechanics* shall have a lien upon the property of their employers for labor performed and for materials furnished." It will be observed that no provision was made for *builders* or for *contractors*. The supreme court held that contractors did not come within the provision of the constitution and statute. In its opinion it defines a mechanic as "a person whose occupation is to construct machines, or goods, wares, instruments, furniture and the like,"—not one who builds houses or railroads. "Laborer" the court defines: "One who labors in a toilsome occupation; a man who does work which requires little skill, as distinguished from artisan." Citing Webst. Dict. The court then defines *builder* to be "one who builds, one whose occupation it is to build, an architect, a shipwright, a mason." The court evidently used *builder* here as synonymous with *contractor*, because the argument was to show that *contractors* were not embraced in the terms *mechanics and laborers*, as used in the constitution and statutes, and the court defined *builder*, in order to show that the *contractor* who built the railroad was not so included; otherwise, there could have been no object in defining the term *builder*.

We have already shown that *Mohr* v. *Clark* was based upon a statute giving a lien to those who *labor on a farm.*

One other case cited by appellant's counsel, which I regard as supporting the contention of appellees, is *Winder* v. *Caldwell,* 14 How. 434. The statute made "all and every dwelling house, or other building, subject to the payment of the debts contracted for, or by reason of any work done, or materials found and provided by any brickmaker, bricklayer, stonecutter, mason, lime merchant, carpenter, painter and glazier, iron monger, blacksmith, plasterer, and lumber merchant, or any other person or persons employed in furnishing materials for, or in erecting or constructing, such house or other building." The statute is most comprehensive in the protection of the classes which the whole acts shows it was obviously designed to protect, to-wit: those "whose personal labor or property have been incorporated in the building, and not the agents, supervisors, undertakers, or contractors who employed them." Of course, it was held that *contractors* were not embraced in such a statute, for the statute sedulously avoided all reference to *builders* or *contractors,* or any terms that could possibly be construed as meaning those who stood in this relation to the owner. The court said. "It was not the merit of the contractor that gave rise to the system. * * * Such persons have an opportunity and are capable of obtaining their own securities"—thus showing that the policy of this law was to protect those only who are not able to protect themselves. The court further said: "The contractor is neither within the letter nor the spirit of the act." How different is our statute, where he is certainly within both the spirit and the letter (under the alternative expression *"builder."*) But the court does say one thing pertinent to the case at bar when it used the expression, "does a master-builder, undertaker, or contractor come within the letter or spirit of the act?" —thus using these terms synonymously. The terms *master-builder* and *builder* mean the same thing. See Lloyd's Law of Building and Buildings, § 85. A *master-builder* is "a contractor who employs men to build." Stand. Dict. *verbo* "Master." In the syllabus of this case also the contractor is called *builder* in one place and *master-builder* in another.

I have examined critically other cases cited, to-wit:

*Smallhouse* v. *Kentucky etc. Co.*, 2 Mont. 443; *Ames* v. *Dyer*, 41 Me. 397; *Whittaker* v. *Smith*, 81 N. C. 340; *Foushee* v. *Grigsby*, 12 Bush, 75; and *Jones* v. *Shawhan*, 4 W. & S. 257. It is sufficient to say that they are all based upon statutes containing restrictive words which control them; none of them provided for *builder* or contractor; and the whole of the acts showed that it could not have been the intention of the legislature to include them. These cases are therefore not in point.

It is a well recognized canon of construction that the whole act, and all of its parts, must be considered, and every word given, if possible, a different meaning. To "deny a word or phrase its known or natural meaning in any instance, the court ought to be quite sure that they are following the legislative intention." *Wilson* v. *Biscoe*, 11 Ark. 44, 48; *Phillips Co.* v. *Pillow*, 47 Ark. 404; Sutherland, Statutory Const., § 279, pp. 361–2. The word *builder* has a well defined, "known, and natural meaning;" it is unambiguous. We have no warrant for changing it. Especially should we not do so, when the obvious intention of the legislature was to provide for the *contractor*, under said term.

It is argued that, as the word "*builder*" and also the words "*contractor and sub-contractor*" occur in the general law of mechanics' liens (Act April 25, 1873; Sand. & H. Dig. § 4731), and that, as "contractor" and "sub-contractor" are omitted from the act under consideration, the intention of the legislature in the latter act was to leave out contractors and sub-contractors. *Non sequitur*. The legislature that passed the law under consideration saw, doubtless, that it would be guilty of inexcusable redundancy in using the words contractor and sub-contractor after having employed the word *builder* and the other words in the statute; for the word *builder* included contractor, and the other words included all sub-contractors. "All persons are considered sub-contractors except those who have contracts directly with the owner or his agents." 15 Am. & Eng. Enc. Law, p. 47; Acts 1895, p. 226. That is the reason why the legislature of 1887 left off these words. For the same reason the legislature of 1895 left out the words "contractor" and "sub-contractor" in the "Mechanics' Lien Law"—the last enactment upon the subject—in naming the persons who were

given the lien. The first section of that law reads: "Every mechanic, builder, artisan, workman, laborer, or other person, who shall do or perform any work upon or furnish any material, * * * etc., for any building, * * * etc., under and by virtue of any contract with the owner or proprietor, or his agent, trustee, contractor, or sub-contractor, shall have a lien, etc." Under this section the *builder* or *contractor* under contract with the owner, his agent, or trustee, has a lien for work done, and the other persons, *sub-contractors*, have a lien for work done under the contract with the contractor, or, if furnishers of material, etc., they have a lien under contract, either with the contractor or the sub-contractor. Now, while neither contractor nor sub-contractor, *eo nomine*, are given a lien in the first section, yet other sections show they were intended to be included. Sections 10, 18. How were they included?. Why, under the terms "mechanic, builder, artisan, workman, laborer, or other person." The legislature of 1895, like the legislature of 1887, seems to have understood the word *builder* in its true sense, and used it accordingly as synonymous with *contractor*. It is asked why it did not use *contractor?* I answer, because builder meant the same, and was just as good. But I have no doubt that it would have used contractor, could it have foreseen that supreme judges and eminent lawyers, or even lesser lights, would differ so greatly about the plain meaning of so very familiar and common a term in building nomenclature as that of *builder*. If *builder* does not mean *contractor*, it was superfluous nonsense to have used it at all; for every phase of work and labor incident to the building of railroads was covered by the other words,—mechanics, artisans, workmen, and laborers.

3. The court emphasizes the words "*who shall do or perform any work or labor*," and concludes from these that the statute, to use the court's language, "does not apply to a contractor who does not actually perform any [manual] work or labor. So far as he may actually labor, he may come within the scope and meaning of this statute." The court here concedes that the contractor may be included, provided he performs labor in person. In other words, the contractor is provided for only as a *laborer*. In support of this position, the court cites

*Aikin* v. *Wasson*, 24 N. Y. 482; *Balch* v. *N. Y. etc. R. Co.*, 46 N. Y. 52; *Gurney* v. *Ry.* 58 N. Y. 358; *Lehigh Coal, etc., Co.* v. *Ry.* 29 N. J. Eq. 252. It would be but commendable consistency to cite, in favor of the position assumed by the court, only cases based upon statutes giving a claim or lien to laborers, or those only who do toilsome manual service under the direction of others; and the cases cited in point at all are just such cases.

In *Aikin* v. *Wasson*, the plaintiff, a contractor, sued a stockholder of a railroad, under a statute which provides "that all the stockholders of every such company shall be jointly and severally liable for all the debts due or owing to any of its *laborers and servants* for services performed for such corporations." The court said: "The word 'servants' is qualified, and to some extent limited, in its meaning by its association with the word 'laborers.' The court further said: "It is obvious from the nature and terms of this and other provisions of the act, as well as from a general policy indicated by analogous statutes, that the legislature intended to throw a special protection around that *class of persons who should actually perform the manual labor of the company.*"

In *Balch* v. *N. Y., etc., R. Co.* the court, in construing the same act, said: "The terms 'laborer' and 'labor' were used in their ordinary and usual sense; and the provision was intended to secure the common laborer, one who earned his daily bread by his toil, a compensation for his own work." Continuing, the court cites the case of *Coffin* v. *Reynolds*, 37 N. Y. 640, and says: "In the latter case the meaning of the same terms used in an analogous statute was restricted, and held not to include skilled artificers, or those rendering service requiring skill, or such as are not regarded as common, ordinary labor." But in *Gurney* v. *Ry.*, also cited, the question applicable here arose upon an order of the special term of the supreme court appointing a receiver, and directing him to pay "debts owing to the *laborers and employees* of the said defendants for labor and service actually done in connection with the defendant's railways." In passing upon and allowing the claim of an attorney who had rendered service in connection with the defendant's railway, the court of appeals, after citing and commenting upon prior

cases, and among them *Aikin* v. *Wasson, supra,* said, *inter alia*:
"It will be observed, in the first place, that the word *employee,*
used in the order, is not found in any of the statutes involved
in these cases.    This is a word of more comprehensive
signification than *laborers and operatives.*    *    *    *    In
those cases (*Aikin* v. *Wasson* and others) the courts held
that it was the policy of the legislature to *protect those.
only who are the least able to protect themselves, and who
earn their living by manual labor for a small compensation, and
not by professional services; and this supposed legislative policy
exerted a controlling influence upon the courts.    In this case it
was entirely different.*"    So, say I, of the case at bar.    Our
statute not only includes "laborers," the special class mentioned
in the case cited, but also includes mechanics, builders, artisans,
workmen and various *material furnishers.*    No one can say that
the other classes of persons mentioned in our statute are lim-
ited by the term "laborers," upon the principle of *noscitur a
sociis.*    And the very decisions cited to maintain this position
show that, had they been based upon a statute like ours, with a
broader purpose and a more extended enumeration of classes,
the decisions themselves would have been in favor of my posi-
tion.    Indeed, later decisions of the same state based upon
different statutes are altogether different.    *Stryker* v. *Cassidy,*
76 N. Y. 50, and *Gurney* v. *Ry., supra.*

The case of *Lehigh Coal Etc. Co.* v. *Ry.,* cited by the court,
was based upon a statute which "in its broadest sense includes only
laborers and employees, and them only to the extent of their
wages."    Of course, it was held that a contractor was not in-
cluded in such a statute; for, he is neither a laborer nor, in a
strict legal sense, an employee, nor does he work for wages.
But see *Mutual Ben. L. Ins. Co.* v. *Rowand,* 26 N. J. Eq. 389,
where it was held that an architect came within the purview of
an act giving a lien "to any person for labor performed, etc."

If, as I contend, contractor is included in the statute, there
can be no doubt that the legislature intended to give him a lien
for his work and labor performed, in the manner in which con-
tractors usually do or perform their work and labor upon rail-
roads.    And how is this?    Why, it would be impossible for
contractors to build railroad beds with their own hands within

the time and in the manner required for such work. Their work involves the finished product of what they undertake. This is the sense in which the words "who shall do or perform any work or labor upon" are used. The words "work" and "labor" here are used to denote the result of what is done, and not the manner of its doing. Under the construction placed upon the words by the court, even if the word "contractor" were used, instead of "builder," still the contractor would have to do the work and labor with his own hands to entitle him to a lien. If the legislature intended to provide for the contractor, in what more simple or appropriate words could they have done so? What else could they have said? The maxim *qui facit per alium facit per se* applies with peculiar force in a case of this kind, where the work to be performed by the contractor can only be done by him through the instrumentality of those in his employ.

Under a statute which contains "mechanics," "artisans," "builders," or, its equivalent, "contractors," it is not necessary, before establishing a claim for lien, to show that the work was done with the claimant's own hands. Kneeland, Mechanics' Liens, § 3; *Hogan* v. *Cushing*, 49 Wis. 169; *Blakey* v. *Blakey*, 27 Mo. 39; *Lester* v. *Houston* (N. C.), 8 S. E. 366; *Hughes* v. *Torgerson* (Ala.), 11 So. Rep. 209; *St. Johns & H. R. Co.* v. *Bartola* (Fla.), 9 So. Rep. 853; *Central Trust Co.* v. *Ry.*, 54 Fed. 723, 727; *Newgass* v. *Ry.*, 72 Fed. 712, 716; *Perry* v. *Ry. Co.*, 56 Minn. 306; *Couper* v. *Gaboury*, 69 Fed. 7; *Trustees* v. *Sanford*, 17 Fla. 162; *Malone* v. *Mining Co.*, 76 Cal. 578, 585, 586; *Sweet* v. *James*, 2 R. I. 270, 286; *Lybrandt* v. *Eberly*, 36 Penn. St. 347; *Singerly* v. *Doerr*, 62 Penn. St. 9, 13; *Hatch* v. *Faucher*, 15 R. I. 459, 461; *Stryker* v. *Cassidy*, 76 N. Y. 50, 53.

The learned counsel for appellants do not controvert this, as I understand, but only contend that contractor is not included in our statute. They say: "When the statute expressly gives the contractor a lien, there is no room for construction." This is precisely what our statute does, as I have attempted to show, under the term "builder." Having concluded that a contractor is embraced in the statute under the term "builder,"

I need not attempt to show that, if not so included, he is brought within the act under the term "*other person.*"

In the preparation of this opinion I have been greatly assisted by the able briefs of counsel for appellees, and have made liberal drafts upon the same. Indeed, I could not have wished to add anything thereto, for I regard the arguments therein made as exhaustive and unanswerable.

I would not have entered upon this task but for the earnest conviction that the court had fallen into error in the construction of this statute, which, taken in connection with *Tucker* v. *Ry. Co., supra,* results in its annihilation, so far as both contractors and laborers on non-completed railroads are concerned. If neither contractors, nor mechanics, artisans, laborers and workmen were given a lien, they were intended to be; and if this opinion does no more than call the attention of the legislature to the present somewhat anomalous state of the law, it will, I trust, have served some useful purpose.