LEVI GILLOCK

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 14, 1898.*

1. CRIMINAL LAW—*when motion to quash indictment for burglary is properly denied.* A motion to quash an indictment charging burglary and larceny, on the ground that it failed to allege that the building entered was one the entry of which would constitute burglary, is properly denied where the indictment is good for larceny.

2. SAME—*rule of strict construction of penal statute should not defeat legislative intention.* The rule that penal laws must be strictly construed should not be carried to the extent of defeating the intention of the legislature in enacting the law.

3. SAME—*robbing a hen-house is burglary.* The words "any other building," used in section 36 of the Criminal Code, which defines the crime of burglary, mean any building not therein specifically mentioned in which a felony or the crime of larceny may be committed, including buildings used as hen-houses, barns or stables.

PHILLIPS, C. J., dissenting.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. JACOB FOUKE, Judge, presiding.

CONNELLY, MATHER & SNIGG, for plaintiff in error.

E. S. SMITH, State's Attorney, for the People.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Plaintiff in error was found guilty in the court below of the crime of burglary. Motions for a new trial and in arrest of judgment were overruled, and he was sentenced to the penitentiary for a term of not less than one year. To reverse that judgment this writ of error is prosecuted.

The indictment is of two counts, charging burglary and larceny. The first avers that the defendant "forcibly broke and entered a certain building then and there owned, used and occupied by John Alberts as a chicken-house, with intent to steal, and did steal, two chickens, of the value of sixty cents." The second is the same as the first, except it avers the entry was made the doors and windows being open.

There was a motion to quash the indictment on the ground that it failed to allege that the building entered was one the entry of which would make the accused guilty of burglary. The motion was overruled, and this ruling is assigned for error. The indictment was at least good as charging the crime of larceny, and for that reason, if no other, the motion to quash was properly denied. The conviction, however, was for burglary, and the motion in arrest of judgment properly raises the question whether the indictment was sufficient to sustain a conviction for that crime.

Section 36 of our Criminal Code (1 Starr & Curtis, p. 764,) provides: "Whoever willfully * * * enters into any dwelling house, kitchen, office, shop, storehouse, warehouse, malt-house, stilling-house, mill, pottery, factory, wharf-boat, steamboat or other water craft, freight or passenger railroad car, church, meeting house, school house or other building, with intent to commit murder, robbery, rape, mayhem or other felony or larceny, shall be deemed guilty of burglary."

It is insisted by plaintiff in error that a "building then and there owned, used and occupied by John Alberts as a chicken-house" is not within the foregoing language. Clearly, the words "or other building" are comprehensive enough to include such a building; but it is insisted that these general words must be construed to mean only buildings of the same kind as those previously specified, under a well known rule of construction that "where a particular class is spoken of and general words follow,

the class first mentioned is to be taken as the most comprehensive, and the general words treated as referring to matters *ejusdem generis* with such class." (Broom's Legal Maxims,—6th Am. ed.—625.) The attempt is to construe this rule so that when applied to our statute the crime of burglary is only committed when the building entered is of the same kind as "dwelling house, kitchen, office, shop, storehouse," etc., named in the statute. A variety of cases are to be found involving the construction and application of the rule. The only case to which our attention has been called which can be said to be directly in point sustaining the contention of plaintiff in error, is that of *State* v. *Schuchman*, 133 Mo. 111. The statute of that State makes it burglary to break and enter any "shop, store, booth, tent, warehouse or other building," and four of the seven judges of the Supreme Court concurred in holding that the words "other building" meant like buildings with those named, and did not include a chicken-house building. The decision is in conflict with our holding in the case of *Orrell* v. *People*, 94 Ill. 456, in which we said: "A 'stable,' as the word is commonly used and understood, is the equivalent of 'building,' and is therefore fairly included, in the statute defining burglary, in that class of buildings denominated 'other buildings.'" Moreover, the force of the decision in the Missouri case is very much weakened by the able dissenting opinion of Grantt, P. J., in which we think it is shown that the majority opinion is not sustained by the weight of authority or sound reasoning.

To limit the meaning of the words "other building," as used in our statute, to buildings *ejusdem generis* with those specifically named, would be to render the general words practically meaningless. What building, not a dwelling house, legally speaking, is of the same kind as a dwelling house? And so with each of the other buildings mentioned. Sutherland, in his work on Statutory Construction, speaking of the rule under discussion, which

does not allow general words to include others of a superior class to those specified, says: "But when the result of thus restricting the general words would be that they would have no effect at all, they must be extended to things superior in quality to those enumerated." And he adds: "For the same reason the restriction of general words to things *ejusdem generis* must not be carried to such an excess as to deprive them of all meaning. The enumeration of particular things is sometimes so complete and exhaustive as to leave nothing which can be called *ejusdem generis*. If the particular words exhaust a whole *genus*, the general words must refer to some larger class." (Secs. 278, 279.) And he again says: "This rule can be used only as an aid in ascertaining the legislative intent, and not for the purpose of contravening the intention, or of confining the operation of the statute within narrower limits than was intended by the law maker,"— citing, among other cases, *Woodworth* v. *State*, 26 Ohio St. 196. The language of the Ohio statute is: "If any person shall abuse any judge or justice of the peace, resist or abuse any sheriff, constable *or other officer* in the execution of his office, the person so offending," etc., and it was held the words included a supervisor of roads and highways. It was contended the words "or other officer" were to be limited in their meaning to officers connected with the administration of justice under the direction of the court, but it was held otherwise, the court saying: "Now, it must be remarked that the rule of construction referred to above can be used only as an aid in ascertaining the legislative intent, and not for the purpose of confining the operation of a statute within limits narrower than those mentioned by the law-maker. It affords a new suggestion to the judicial mind, that when it clearly appears that the law-maker was thinking of a particular class of persons or objects his words of more general description may not have been intended to embrace those not within the class. The suggestion is one of common sense. Other

rules of construction are, however, equally potent, especially the primary rule which suggests that the intent of the legislature is to be found in the ordinary meaning of the words of the statute. Another well established principle is, that even the rule requiring the strict construction of a penal statute, as against the prisoner, is not violated by giving every word of the statute its full meaning, unless restrained by the context." On the same principle it was held in *Regina* v. *Edmundson*, 2 Ellis & Ellis, (Q. B.) 77, the language, "are concealed in any dwelling house, out-house, garden *or other place or places*," included a warehouse. In *Daggett* v. *Collins*, 18 C. B. 668, "no house, room *or other place*" was held to include a place under a tree in Hyde Park. In *Shilleto* v. *Thompson*, 1 Q. B. Div. 12, "any meat, fish, poultry *or other victuals or provisions*" was held to include cheese. See, also, *Foster* v. *Blount*, 18 Ala. 687; *State* v. *Holman*, 3 McCord, 306; *Randolph* v. *State*, 9 Tex. 521; *State* v. *Williams*, 2 Strob. 474; *State* v. *Solomon*, 33 Ind. 450. It is said by Endlich on the Interpretation of Statutes (sec. 410): "The general object of the act, also, sometimes requires that the final, generic word shall not be restricted in meaning by its predecessors,"—citing *Regina* v. *Edmundson, supra.*

The purpose of the legislature in passing the foregoing section of our statute was to radically change the common law as to the crime of burglary, and make those who burglariously enter other buildings than a mansion or dwelling house guilty of that crime, and we think the intention to include buildings not *ejusdem generis* with those mentioned by name is clearly shown by the use of the words "*other buildings*." Many buildings in which "murder, robbery, rape, mayhem or other felony or larceny" may be committed could readily be named, the entry of which with intent to commit those crimes would not be burglary if the construction insisted upon by plaintiff in error should be adopted, and no reason is or can be suggested why they were not intended to be included. We

are also of the opinion that the proper application of the rule invoked to the statute fully sustains this view. It will be seen the rule is, where a *particular class* is spoken of, followed by general words, the general words are to be treated as referring to matters *ejusdem generis* with such *class*. What is the class of buildings specifically enumerated in the statute? Manifestly, those in which one of the crimes mentioned may be committed. Therefore, any *"other building"* in which the crime of larceny may be committed is of the same kind with the particular class mentioned. Buildings used as barns, stables or chicken-houses, in which grain, harness, implements, animals or fowls are kept which are the subject of larceny, are "other buildings" of the same class with dwelling houses, kitchens, shops, offices, etc. Of course, the place entered, to be within the general words, must be a *building*. But in this case no objection is urged to the indictment as failing to charge that fact, nor can it be said that the proof fails to sustain the averment. The uncontradicted evidence is, that it is a frame structure sixteen feet square, with doors and windows and covered with a tin roof. That the chickens kept therein were the subject of larceny cannot be questioned, and whether they were of much or little value can in no way affect the question as to whether the entry of the building was burglarious.

The rule that penal laws are to be strictly construed does not militate against the views herein expressed. That rule is never to be carried to the extent of defeating the manifest intent of the legislature in enacting a law.

Upon a re-argument of this case and a careful reconsideration of the errors assigned we are convinced there is no reversible error in the record, and that the judgment of the circuit court should be affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE PHILLIPS, dissenting.