# KANSAS CITY SOUTHERN RY. CO. v. WALLACE *et al.*

### No. 2640.  Opinion Filed June 3, 1913.

### (132 Pac. 908.)

1. **RAILROADS—Liens for Construction—Waiver.** The provisions of mutual contracts between the plaintiff in error, its principal contractor and subcontractors, examined and held that, under their terms, the right to a lien upon the railway company and its properties was not waived by a subcontractor where action was brought therefor after the award of the resident engineer had been published.

2. **SAME—Construction—Lien.** Under section 6166, Comp. Laws 1909 (Rev. Laws 1910, sec. 3868), any person other than the specific classes enumerated therein, who performed any work or labor upon or furnished any materials to facilitate the operation of any railroad, is entitled to a lien therefor upon the roadbed, buildings, equipments, income, franchises, and all other appurtenances.

3. **STATUTES—Construction.** The rule of ejusdem generis is resorted to merely as an aid in construction. If, upon consideration of the whole law upon the subject, and the purposes

sought to be effected, it is apparent the Legislature intended the general words to go beyond the class specifically designated, the rule does not apply. Moreover, where the particular words exhaust the class, then the general words must be given a meaning beyond the class.

4.    RAILROADS—Construction—Lien—"Person Who Shall Perform Any Work on Any Railroad." Under the provisions of section 6166, Comp. Laws 1909 (Rev. Laws 1910, sec. 3868), providing that "every mechanic, builder, artisan, workman, laborer, or other person who shall do or perform any work or labor upon * * * any railroad," under the general language used, it is intended to and does include contractors and subcontractors who bring themselves otherwise within the terms of the act.

(Syllabus by the Court.)

*Error from District Court, Sequoyah County;*
*John H. Pitchford, Judge.*

Action by John Wallace and another, etc., against the Kansas City Southern Railway Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

*Read & McDonough,* for plaintiff in error.
*Kimple & Daily,* for defendants in error.

DUNN, J.    This case presents error from the district court of Sequoyah county and is an action brought by defendants in error against the plaintiff in error and the Ferguson Contracting Company to recover a judgment for a balance due on work and labor performed under a certain contract by plaintiffs, as subcontractors under the said Ferguson Contracting Company, and to enforce a lien for the amount thereof against the Kansas City Southern Railway Company, on whose line of railroad the work was performed. The answer denied the amount claimed and the right of plaintiffs to a lien. On a trial had on the issues made, the court found in favor of plaintiffs for the amount sued for and rendered a judgment decreeing the same a lien upon the roadbed, buildings, and equipments, etc., of the said railroad company, from which the case has been brought to this court for review.

But two propositions are urged by counsel for plaintiff in error, which are: First, that, under the contract existing

between it and the Ferguson Contracting Company and between the latter and the plaintiffs, a right to a lien was, by the plaintiffs, waived; and, second, that the statute under which the action is brought gives no lien to contractors.

The contract between the Ferguson Contracting Company and the railway company contains, among other things, the following section:

"The contractor further agrees to pay in full for all materials by him furnished for the construction of the work aforesaid and for all labor by him employed upon said work, or any part thereof, and to so contract for said labor as to retain from the money due therefor the amount of the board bills, if any, contracted during the performance of such labor, and to pay the board bills with the money so retained, and to save the railway company free and harmless from any lien for work or labor performed or material or supplies furnished in the performance of the work under this agreement, and from every claim, demand or lien arising from or growing out of any act or thing done or suffered by the contractor or his agents or servants and his or their employees, in connection with the work aforesaid."

And the contract of the plaintiffs with the said contracting company provides as follows:

"It is understood and agreed by both parties hereto that this agreement is and shall be subordinate to the said contract heretofore made between the party of the second part herein and the railway company, in all its provisions as to the times, manner and conditions in and under which the whole and every part of said construction work is to be done and performed and in all essential respects, and that all the rights, powers and privileges that are given and reserved to said railway company in their said contract with the party of the second part herein, are hereby expressly given, reserved and conceded to the party of the second part in and under this agreement, as between the parties hereto."

From the proof it is made to appear that some time prior to the 1st of December, 1910, the plaintiffs received from the resident engineer of the railway company statements showing the amount due under the contract of plaintiffs with the Ferguson Contracting Company. On these statements

the action seems to have been based, and under such circumstances the contract of the plaintiffs contained the following provision with reference to the filing and enforcement of a lien:

"As it is the express intention of the parties hereto to avoid litigation, and it is further expressly understood and agreed between the parties hereto that there shall be no liens filed or suits brought until after the resident engineer has published his award, and then only for the purpose of enforcing said award."

As we view the terms of both contracts taken together, it was the intention of the parties to avoid any litigation over unliquidated accounts. In other words, no suits were to be brought nor liens filed until after the resident engineer had published his award, and the agreement then seems to contemplate that suits might be brought, if only for the purpose of enforcing such award. This action was for that purpose, and hence the contention of counsel for the company that plaintiffs had waived their right to a lien, under the terms of the contract, is untenable; the rule being that there is no implication in favor of a waiver, but to exist it must be made to clearly appear. 27 Cyc. 262.

The second proposition presented is one of more difficulty and is in fact the one upon which counsel chiefly rely. It is divided into two parts and arises on the question of the proper construction of section 6166, Comp. Laws 1909 (Rev. Laws 1910, sec. 3868), which provides as follows:

"Every mechanic, builder, artisan, workman, laborer, or other person, who shall do or perform any work or labor upon, or furnish any materials, machinery, fixtures or other thing towards the equipment, or to facilitate the operation of any railroad, shall have a lien therefor upon the roadbed, buildings, equipments, income, franchises, and all other appurtenances of said railroad, superior and paramount, whether prior in time or not, to that of all persons interested in said railroad as managers, lessees, mortgagees, trustees and beneficiaries under trust or owners."

The work of plaintiffs in this case was the construction of concrete abutments, piers, and furnishing material for the

roadbed of the railway, and it is the contention of counsel
that the only persons who are given a lien under the forego-
ing act are those who furnish labor and materials toward the
equipment of the railroad or to facilitate the operation of
the same; that equipment means cars, locomotives, and things
of that class; and, as none of the work performed by plain-
tiffs falls therein, the statute gives them no lien thereof. This
particular branch of the case is dealt with in *Kansas City
Southern Ry. Co. v. Rosier, ante,* 132 Pac. 908, and the
discussion therein contained is pertinent and conclusive and
we will not reiterate it. Suffice to say that therein we held
that under this section laborers who performed work on a
roadbed, right of way, and tracks of a railway company were,
under this statute, entitled to the lien here objected to.

The question of whether the plaintiffs, who were subcon-
tractors, would be entitled to such a lien, even if the same
was provided for by the statute, for the character of their
work is the second proposition presented by counsel. Coun-
sel for the defendant company insist that contractors or sub-
contractors, not being mentioned in the act and not being
of the same class of persons as those mentioned in the act,
were not included therein, and that it was not the intention
of the Legislature that the protection and remedy provided
for should be extended to them. They rely upon the cases
of *Tucker v. Railway Company,* 59 Ark. 81, 26 S. W. 375,
and *Little Rock, H. S. & T. R. Co. v. Spencer,* 65 Ark. 183,
47 S. W. 196, 43 L. R. A. 334, to support the position that
the word "builder" does not include contractors or subcon-
tractors, while counsel for plaintiffs present a number of au-
thorities, along with the definitions of a number of lexicog-
raphers, to support the proposition that the word "builder"
is synonymous with contractor, and that it was the inten-
tion of the Legislature to embrace people of the class of their
clients within it. The writer of this opinion, from an ex-
amination of the authorities, is much inclined to the view
that the word "builder" is sufficiently broad to embrace within

it a contractor, whether he be a principal contractor or a subcontractor; and while not passing thereon, the majority of the court is of the view that the intention of the Legislature to include parties within the class of plaintiffs in this action is more clearly manifested from another phrase which the act contains, for all agree that they are provided for under one or the other.

It is a fundamental rule that courts favor a construction which will render every word operative rather than one which makes some words idle and nugatory. *Bohart et al. v. Anderson,* 24 Okla. 82, 103 Pac. 742, 20 Ann. Cas. 142. So that, accepting the contention of counsel for the railway company as sound, and for the purposes of this discussion concurring therein, it would leave, so far as the specifically enumerated classes are concerned, contractors and subcontractors, who might have performed work and labor upon the roadbed or furnished material towards facilitating the operation of the railroad, unprovided for. Taking this to be true, then, a critical examination of the act and due consideration for the scope of the duties to be performed by those who are enumerated, discloses that every department of service demanded for the construction of a railroad is provided for by the services rendered and labor performed by the classes of servants and agents which are enumerated, except contractors and subcontractors. For instance, the mechanic is the one who works and performs services with machinery or mechanics. The builder, if not a contractor, is the one who constructs and puts into permanent form the structure then in hand, whether it be the roadbed, bridges, buildings, or equipment. Within the term "artisan" is embraced the architect, the one who plans, sketches, and presents the complete details for the use of the contractor and builder. A workman upon a railroad might be any one or all of the classes below the architect, and in some instances might include those who assisted and worked with him, while laborer would embrace every one who with his hands, his crude implements, or his teams contributed his

necessary and essential part toward the construction, either of the roadbed or of any other parts of the railway equipment demanding that character of service. The *resume* of the classes specifically enumerated discloses under our postulate that contractors and subcontractors are the only persons unprovided for in the list, and unless they are held to be included within the phrase, "or other person who shall do or perform any work or labor upon * * * any railroad," this language is totally without force or effect, for assuredly those who furnish material cannot be held to be unprovided for.

It is true that, under the doctrine *ejusdem generis,* general words, such as those just referred to, for the purpose of ascertaining the intent of the Legislature, are generally restricted in their scope to the specific class of objects named. But, as is said by the Supreme Court of Missouri in the case of *State v. Smith,* 233 Mo. 242, 135 S. W. 465, 33 L. R. A. (N. S.) 179:

"The rule of *ejusden generis* is * * * resorted to merely as an aid in construction. If, upon consideration of the whole law upon the subject, and the purposes sought to be effected, it is apparent that the Legislature intended the general words to go beyond the class specifically designated, the rule does not apply. If the particular words exhaust the class, then the general words must have a meaning beyond the class or be discarded altogether."

Other authorities supporting these general propositions and instructive on this phase of the case may be noted as follows: 2 Lewis' Sutherland, Statutory Construction (2d Ed.) secs. 436, 437, 438; 36 Cyc. 1119-1122; *United States Cement Co. v. Cooper,* 172 Ind. 599, 88 N. E. 69; *Weiss v. Swift & Co.,* 36 Pa. Super. Ct. 376; *Strange v. Board of Com'rs,* 173 Ind. 340, 91 N. E. 242; *State v. Brown et al.,* 163 Mo. App. 30, 145 S. W. 1180; *Mears Mining Co. v. Maryland Casualty Co.,* 162 Mo. App. 178, 144 S. W. 883; *State v. Pabst Brewing Co.,* 128 La. 770, 55 South. 349.

The Supreme Court of Indiana in the case of *United States Cement Co. v. Cooper, supra,* speaking to this subject, says:

"In the construction of statutes or written contracts the doctrine of *ejusdem generis* is applicable, not in all but in a certain class of cases when general words are not accorded their usual and ordinary meaning, but restricted to things of the same kind, or genus, as those designated by the particular words. 2 Lewis' Sutherland, St. Con. (2d Ed.) sec. 437; *Foster v. Blount,* 18 Ala. 687-689. The office of the rule, however, like that of all other canons of construction, is to afford aid to the court in developing the true meaning of the statute, and cannot be employed to restrict the operation of an act within narrower limits than was intended by the lawmakers. *Woodworth v. State,* 26 Ohio St. 196; *Willis v. Mabon,* 48 Minn. 140-156, 50 N. W. 1110, 16 L. R. A. 281, 31 Am. St. Rep. 626; Lewis' Sutherland, St. Con (2d Ed.) sec. 437. It is never used in an arbitrary sense, but operates as a sort of suggestion to the judicial mind that, when specific words of definite and certain meaning in a statute are deemed advisable by the framers, it may be that they intended the general words to extend only to persons or objects of the same kind or class as those embraced within the particular words, or they might not have gone to the pains of any specific enumeration. Whether the doctrine should be applied in any case depends largely upon the character and contents of the act as a whole, having due regard for that primary rule of construction that the object of a law must be sought from the entire act, including the title, and from a consideration of the evil to be remedied, the state of public sentiment existing at the time of the passage of the law, and the general purpose of the act, as derived from a consideration of every section. If the general purpose of the legislature clearly appears from a study of all the parts, that purpose cannot be defeated or limited by the doctrine we are considering. *Webber v. Chicago,* 148 Ill. 313-318, 36 N. E. 70; *Gillock v. People,* 171 Ill. 307, 49 N. E. 712; *Winters v. Duluth,* 82 Minn. 127, 84 N. W. 788; *Lynch v. Murphy,* 119 Mo. 163, 24 S. W. 774; *Woodworth v. State,* 26 Ohio St. 196; Lewis' Sutherland, Stat. Const. (2d Ed.) sec. 437; *State v. Villines* (1904) 107 Mo. App. 593-598, 81 S. W. 212; *State v. Harter* (1905) 188 Mo. 516, 87 S. W. 941-944. Another potential rule of

construction has peculiar application to the facts of this case, namely, that when the particular words embrace all the persons or objects of the class mentioned, and thereby exhaust the class, in such case there can be nothing *ejusdem generis* left for the rule to operate upon, and we must give the general words a meaning different from that indicated by specific words, or ascribe to them no meaning at all. *Bank of Commerce v. Ripley,* 161 Mo. 126-132, 61 S. W. 587; *Ruckert v. R. Co.* (1901) 163 Mo. 260-276, 63 S. W. 814; *Gage v. Cameron,* 212 Ill. 146-161, 72 N. E. 204; *Gillock v. People,* 171 Ill. 307, 49 N. E. 712; *Ellis v. Murray,* 28 Miss. 129-142; *Fenwick v. Schmalz,* 3 C. P. L. R. 313; Lewis' Sutherland, Stat. Const. (2d Ed.) sec. 437; Maxwell's Interp. of Stat. (3d Ed.) p. 478; Endlich, Interp. of Stat. sec. 409. This result must be avoided, if possible, at the behest of another canon of construction, that a statute must be construed so as to give effect to all its words."

The case of *Weiss v. Swift & Co., supra,* was one wherein the act in question read as follows:

"In every sale of green, salted, pickeled, or smoked meats, lard, and other articles of merchandise, used wholly or in part for food," etc.

The question before the court was whether "eggs" were included within the act. In holding that they were, in its discussion the court said:

"If the words were 'every sale of green, salted, pickled, or smoked meats, lard, and other articles of merchandise,' without more to indicate the subjects of sale intended to be covered, there would be propriety in applying the general principle of construction that when certain things are enumerated, and then a phrase is used which might be construed to include other things, it is generally confined to things *ejusdem generis*. * * * But in applying this principle of construction, and in determining what things are *ejusdem generis,* regard must be had to the general subject to which the act relates. Things which plainly belong to the same class when one subject is being considered might belong to an entirely different class when considered with reference to another subject. The rule would be absurd if under the head of 'other' nothing can be included in the construction of the act which is not

exactly the same in every particular as the thing specified. * * * Moreover, it has been held upon sound reason that, when the particular word or words exhaust a whole genus, the general term will not be regarded as surplusage but will be construed to refer to a larger class. This must be so, if regard be had to the rule, which is more imperative than the rule *ejusdem generis*, that a statute is to be considered as a whole, so that, if possible, effect will be given to every part of it. Here the subject to which the act relates, as shown by the body of it, as well as by its title, is the sale of provisions by description; and, considering the specific words 'meats' and 'lard' as furnishing a sample of the kind of provisions referred to, the words 'other articles of merchandise,' upon the proper application of the rule *ejusdem generis*, would be confined to such provisions as are 'used wholly or in part for food,' and this would include eggs. We take it, therefore, that if the last-quoted words had not been added in the statute, the words 'other articles of merchandise' would have included eggs, because, having regard to the subject of legislation, they are of the same kind of things that are specifically mentioned. At any rate, by adding the words 'used wholly or in part for food,' the Legislature set up the standard of similarity to the things specifically mentioned to which the other articles of merchandise must conform; and no principle of construction requires us to impose any other test, except that the articles of merchandise come up to this standard, and, in addition be such as are comprehended within the term 'provisions,' as that term is commonly understood when used in such connection as this."

We can conceive of no reason nor logic which would support a conclusion that the Legislature intended to and did give every other person, who made the construction and operation of a railroad possible, a right to a lien, and left out the one who built the bridges and abutments or who built the very roadbed of the railway itself. As is said by Judge Wood in his dissenting opinion in the case of *Little Rock H. S. & T. R. et al. v. Spencer*, 65 Ark. 183, 47 S. W. 196, 42 L. R. A. 334:

"The contractor who furnishes the various appointments, teams, wagons, barrows, shovels, scrapers, axes, picks, etc., and the men to use them. is no less deserving of protection, and

no more able to protect himself, than the 'iron barons,' 'steel kings,' and 'rolling stock magnates,' who are given a lien under this law. The Legislature that would make a discrimination at once so unjust and unreasonable would, in the very act lay at its door an impeachment for besotted ignorance or gross partiality."

And while the learned justice concludes that the term "builder" is sufficiently broad to embrace "contractor," his remarks are clearly as pertinent when "contractor" or "subcontractor" is held to fall within the larger scope of the general words used.

Finding, therefore, that the primary intention of the Legislature was that those should be entitled to a lien who performed any work or labor or furnished anything toward the equipment, facilitating the operation of any railroad, and that contractors and subcontractors who had done these things were entitled to the benefit of this statute, and that, if not properly included within the term "builder," they were intended to be embraced by the general language used, the judgment of the trial court, being without error, is affirmed.

All the Justices concur.