### COLLINS v. OKLAHOMA STATE HOSPITAL et al.

No. 7794.—Opinion Filed July 25, 1916.

On Rehearing, Oct. 28, 1919.

**1. Libel and Slander—Words Libelous Per Se.**

In this state it is libelous per se to write of or concerning a white person that said person is colored.

**2. Same—Actions—Parties Liable.**

A cause of action for libel cannot be maintained against a hospital for the insane on account of the act of its officers and employes in placing a white patient in that part of the institution set apart and used for colored patients.

**3. Same—Construction of Language.**

In construing language alleged to be libelous, the courts should give to said language the same meaning and understanding as is usually applied thereto.

**4. Same—Statutory Definition.**

Section 4956 of the Revised Laws of 1910 considered, and held, that the general words "or other fixed representation" are used for the purpose of including other species of the same kind as the particular words there used—"writing, printing, picture, or effigy."

**5. Same—Privileged Communications—Letters.**

The letter which constitutes the second cause of action and is attached to the petition as a part thereof examined, and the same held to be privileged.

(Syllabus by Hooker, C.)

Error from District Court, Oklahoma County; John W. Hayson, Judge.

Action by Joseph Collins against the Oklahoma State Hospital and others. Judgment for defendants, and plaintiff brings error. On rehearing, affirmed.

Robert L. McLendon, Chas. West, Jos. L. Hull, and H. H. Hagan, for plaintiff in error.

Parker & Simons, Burford, Robertson & Hoffman, S. P. Freeling, and R. E. Wood, for defendants in error.

Opinion by HOOKER, C. It is alleged in the petition in this case that Joseph Collins is a white person and that Lee Collins, a female about 33 years of age, is his daughter by his wife, and is a white person of pure Caucasian blood; that the defendant companies are domestic corporations, and that the Oklahoma Sanitarium Company was, on July 14, 1914, engaged in the business of operating for profit a hospital for the insane at Norman, Oklahoma, and that about November 19, 1914, the Oklahoma State Hospital became the successor to the Oklahoma Sanitarium Company in said business; that on or about the 30th of July, 1914, the said Lee Collins, having been previously adjudged insane and committed by the proper court to the asylum, was taken by the plaintiff to the Oklahoma Sanitarium Company as an insane patient for treatment, where she was received by said company and placed in a ward used by the white people at said place; that a few days thereafter those in charge of the institution placed her in a ward set apart for negro patients and entered upon its records opposite her name the word "colored," and thereby held her out to the world as a woman having negro blood, which condition continued until February, 1915.

It is alleged by the plaintiff that by reason of this act said defendants falsely and maliciously imputed to this plaintiff either the commission of a crime against the laws of this state, or else being of negro blood, and that, inasmuch as he and his family were respected in the community in which they resided and recognized as white people, this false imputation caused a doubt upon his social status, and caused him great humiliation, etc., for which he sought damages in the sum of $25,000.

In the second cause of action it is alleged that on or about the 22nd day of January, 1915, said defendants did commit a wrongful libel by publishing a written statement made by them to Joseph Collins, this plaintiff, in the form of a letter, which is as follows:

"Oklahoma State Hospital
"Norman Oklahoma.
"Jan. 22, 1915.
"Joe Collins, Vailliant, Okla., Dear Sir: I have yours of the 15th inst., in answer beg to say that Lee Collins (Col.) is in fairly good mental condition, also good physical condition. We are unable to say whether this improvement is more than temporary at this time.
"Yours truly,
"D. W. Griffin, Superintendent."
"AAT.AK.

—and that said letter was exhibited to A. A. Thurlow and other persons, and sent through the U. S. mail and it contained the false statement that Lee Collins was a negro, and by reason thereof the plaintiff was damaged in the sum of $25,000.

The first question for us to determine is whether it is libelous within the purview of our statute for the authorities in charge of an insane institution to place a white person in that part thereof set apart for negro patients.

It is charged in the petition that the officers and agents of the company placed Lee Collins in a ward set apart for negro patients, and thereby declared to the world that she was a negro woman, and that it entered upon its records opposite her name wherever it appeared the word "colored."

It will be noticed that there is no charge in this first cause of action in said petition contained that the word "colored" written opposite the name of Lee Collins was ever published, and in order to constitute libel there must be a publication. Under the allegations of the petition the writing of the word "colored" opposite her name upon the records of the institution is not a publication, as it is not alleged that the same was ever seen by anyone, or that said books had ever been examined by anyone whatsoever, or that the word thus written had ever been seen or read by any person whomsoever. This in our judgment is necessary before an

action for libel can be based thereon, so far as the writing of said word is concerned. Necessarily the person who wrote the word in the books must have seen it, but that person must have been the agent of the corporation, if the act is to be said to be the act of the corporation, and such agent was for that purpose the corporation itself. It can hardly be said to be a publication of a libel for one to show the libelous matter to himself. This eliminates the charge in the first cause of action that the word "colored" was written opposite the name of Lee Collins, and leaves for us to determine whether it is libelous under our statute for an institution of this character to place a white person in a ward set apart for its negro patients. The question whether it is libelous per se to write of or concerning a white person that he is a negro has been before the courts of many states of this Union and has been decided from both viewpoints. To determine this, however, we must refer to section 4956 of the Revised Laws of 1910, and by that we see that any false or malicious unprivileged publication by writing, printing, etc., which exposes any person to public hatred, contempt, etc., is libelous. In this state, where a reasonable regulation of the conduct of the races has led to the establishment of separate schools and separate coaches, and where conditions properly have erected insurmountable barriers between the races when viewed from a social and a personal standpoint, and where the habits, the disposition, and characteristics of the race denominate the colored race as inferior to the Caucasian, it is libelous per se to write of or concerning a white person that he is colored. Nothing could expose him to more obloquy or contempt or bring him into more disrepute than a charge of this character. Spencer v. Looney (Va.) 82 S. E. 745; Spotorno v. Fourichon (La.) 4 South. 71; Flood v. News (S. C.) 50 S. E. 637; Jones v. Polk (Ala.) 67 South. 577; Upton v. Times (La.) 28 South. 97.

Is the placing of a white patient in that part of the institution used and set apart for colored patients libelous so as to give to the patient or others a cause of action within the statutory definition of libel? What is libel in this state must be determined by the provision of the statute as defined by section 4956 of the Revised Laws of 1910. In other words, a cause of action for libel in this state is statutory, and to determine what is libelous herein we must refer to the statute, as that is controlling.

Section 4956 of the Revised Laws of 1910 is as follows:

"Libel is a false or malicious unprivileged publication by writing, printing, or effigy or other fixed representation to the eye which exposes any person to public hatred, contempt, ridicule, or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation, or any malicious publication as aforesaid, designed to blacken or villify the memory of one who is dead, and tending to scandalize his surviving relatives or friends."

But we cannot see, under the view that we take of this provision of the statute, how an action for libel can be based thereon. By reference to this statute we find that the general words "or other fixed representation" follow the enumeration of particular classes of things contained in said section, to wit, "writing, printing, picture, or effigy," and, under the well known rule of statutory construction, the general words "or other fixed representation" will be construed as applicable only to the things of the same general nature or class as those enumerated, to wit, "writing, printing, picture, or effigy."

The particular words used are presumed to describe certain species, and the general words are used for the purpose of including other species of the same kind or genus. The words "or other fixed representation," following the enumeration of "writing, printing, picture, or effigy," are therefore to be read as "other such like kind or character." What was the legislative intent in the enactment of this statute when the words "or other fixed representation" were incorporated therein? If the Legislature had intended the general words "or other fixed representation" to be used in their unrestricted sense, they would have made no mention of the particular classes, mentioned above in said statute. The generic term in this statute is the false and unprivileged publication, and the special words are used to describe the classes or species of the generic term, and the general words are used to include other species of the same kind as those referred to in the particular words above given.

In 36 Cyc. p. 1119, it is said:

"By the rule of construction known as 'ejusdem generis,' where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The particular words are presumed to describe certain species and the general words to be used for the purpose of including other species of the same genus. The rule is based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense they would have made no mention of the particular classes. The words 'other' or 'any other' following an

enumeration of particular classes are therefor to be read as 'other such like,' and to include only others of like kind or character." See the authorities cited in the notes on page 1120.

In 21 Enc. of Law (2nd Ed.) p. 1012, it is said:

"Where general words follow particular ones, the rule is to construe the former as applicable to persons or things ejusdem generis. This rule, which is sometimes called Lord Tenterden's rule, has been stated, as to the word 'other,' thus: Where a statute or other document enumerates several classes of persons or things and immediately following and classed with such enumeration the clause embraces 'other' persons or things, the word 'other' will generally be read as 'other such like,' so that persons or things therein comprised may be read as ejusdem generis with, and not of a quality superior to or different from, those specially enumerated." See the authorities cited in the note on this page.

This court, in the case of Kansas City Southern Ry. Co. v. Wallace et al., 38 Okla. 233, 132 Pac. 908, said:

"It is true that, under the doctrine of ejusdem generis, general words, such as those just referred to, for the purpose of ascertaining the intent of the Legislature, are generally restricted in their scope to the specific class of objects named. But, as is said by the Supreme Court of Missouri in the case of State v. Smith, 233 Mo. 242, 33 L. R. A. (N. S.) 179, 135 S. W. 465:

" 'The rule of ejusdem generis is * * * resorted to merely as an aid in construction. If, upon consideration of the whole law upon the subject, and the purposes sought to be effected, it is apparent that the Legislature intended the general words to go beyond the class specifically designated, the rule does not apply. If the particular words exhaust the class, then the general words must have a meaning beyond the class or be discarded altogether.' "

Now, we submit that the part of special words here used did not exhaust the class intended, and therefore the general words did not have a meaning beyond the class and can not be discarded. In other words, there might be a question of doubt as to whether an engraving or a statute or a wax figure would come within the special words used in this statute, but the Legislature, in order to embrace everything within the class, used the words "or other fixed representation." Numerous authorities could be cited upon either side of this proposition, for it is entirely a matter of legislative intent, to be determined from a construction of the statute. The way we view it, however, and ap-

plying what to us is a fair and a reasonable construction of the statute in question, we must hold that the words "or other fixed representation" must be limited to the class intended by the use of the particular words "writing, printing, picture, or effigy," as contained in the first part of the statute.

We cannot say that placing a white patient in that part of the institution set apart for colored patients comes within the application of the statute so as to make the same libelous.

However, if it were libelous, we exceedingly doubt, under the provisions of our statute, whether the plaintiff would have a cause of action therefor.

As to the second cause of action, it is contended that the communication complained of is a privileged communication, the same being a letter from the superintendent of the asylum to the father of Lee Collins, a patient at that institution, in reference to her, and being written in reply to a letter addressed to the institution by the plaintiff here.

In the brief of the plaintiff in error it is said:

"In this letter in the instant case the subject-matter of the letter was the mental condition of Lee Collins. As to that the letter was qualifiedly privileged, but the letter of inquiry did not seek information as to the race of Lee Collins. That fact had no reference to her mental condition and had no bearing upon it. When the information was volunteered that Lee Collins was colored it was information neither asked for by the letter of inquiry nor pertinent to the letter of reply. It was entirely foreign, untrue, derogatory matter, for which the defendants cannot claim the cloak of qualifiedly privileged."

Courts, in construing publication alone to be libelous, must adopt the same meaning and give to the words used the same understanding as others would ordinarily give to them. If the words as used would ordinarily convey to the public a meaning which would subject one to obloquy, etc., and are otherwise libelous, the court should give to them that meaning and understanding. If an abbreviated word is used, the court should give to the abbreviation the same meaning and understanding that is commonly given and understood by the use of such an abbreviated word. Here the abbreviated word "colored" or "Col." is used in said letter and is complained of as libelous. "Col." is an abbreviation for "colored," and the word

"colored" is synonymous with the word "negro," and inasmuch as "Col." is an abbreviation for "colored" and the word "colored" as applied to the person is synonymous with the word "negro," it is libelous per se to write of a white person that he is colored.

We agree with the defendants in error that the entire contents of this letter complained of is privileged. It was written by the superintendent of an institution having in charge the patients of the state, helpless and unfortunate as they are, to the father of one of the patients, no doubt grievously interested in that patient's welfare. The law, as well as the dictates of common humanity, imposed upon the superintendent of that institution the duty of answering inquiries of such character, and likewise the duty of answering fully, fairly, and freely as to the condition of the patient inquired about. As we view it, the subject-matter of the letter was Lee Collins, and it was the duty of the superintendent to write to her father, not alone as to her mental condition and her physical welfare, but any other fact or circumstances which he should know, in order that he might be the better enabled to aid and assist in her comfort and welfare. If she was regarded at the institution as colored, it was his duty to inform the father of that fact, so that if an injury was being done to her it could be remedied. And if the letter, which is the publication complained of, is protected by the rule of being qualifiedly privileged in all other things save and except the use of the abbreviated word "Col.," then the entire subject-matter of the letter was likewise within the rule.

Viewing this matter as we do, we must hold that the allegations contained in the first cause of action of the petition do not set forth facts sufficient to constitute libel within the purview of our statute, and that the libelous matter complained of in the second cause of action is privileged, and the judgment of the trial court in sustaining a demurrer thereto must be affirmed.

### On Rehearing.

PER CURIAM. The petition for rehearing in this case was heretofore granted and the cause has been reheard on oral argument and briefs submitted. After further consideration of the questions urged for reversal of the judgment of the trial court, we are of the opinion that the former decision is correct, and the opinion of the commission, filed on July 25, 1916, is adopted as the opinion of the court in this case.