FANNING, P. E., D. B. A. RALPH FANNING AND ASSOCIATES, PLAINTIFF, *v.* COLLEGE OF STEUBENVILLE, DEFENDANT.

Common Pleas Court, Jefferson County.

No. 48328.   Decided April 27, 1961.

146

*Mr. Fred J. Milligan*, for plaintiff.
*Mr. Robert J. Anglin*, for defendant.

GRIESINGER, J. This matter is before the Court on the demurrer of the defendant to the plaintiff's amended petition. The plaintiff in his amended petition sets forth that he is an engineer; that he entered into a written contract for professional services with the defendant, the College of Steubenville. A copy of the contract was attached to the petition and made a part thereof. The professional services to be rendered by the plaintiff and the fees to be paid therefor were fully set forth in said contract.

The contract sets forth that the defendant intended to build certain college and associated buildings, including, but not necessarily limited to, the following types of facilities:

(1) College Lecture Facilities.

(2) Science Facilities.

(3) College Library Facilities.

(4) College Administration Facilities.

(5) Monastery and Chapel.

(6) Student Activity Facilities. To be located on the site now owned by the College of Steubenville, lying north of State Highway 22.

The contract was entitled "Agreement between owner and engineer." Among the professional services to be performed by the plaintiff were:

1—The Engineer's Services:

(a) The Engineer's professional services consist of the necessary conferences, the preparation of preliminary studies, working drawings, specifications, large scale and full size detail drawings, for architectural, structural, plumbing, heating, electrical and other mechanical work;

(b) Assistance in the drafting of forms of proposals and contracts; the issuance of certificates of payment; the keeping of accounts; the general administration of the business and supervision of the work.

Plaintiff says that the defendant breached said contract and prays that under the authority of Section 2711.01, Revised Code, for the Court to designate and appoint an arbitrator to act under the Arbitration Agreement provided for in said contract.

The defendant, the College of Steubenville, filed a demurrer to the plaintiffs' amended petition on the ground that the amended petition does not state a good cause of action. The defendant contends that the contract calls for the services of an architect; that the plaintiff is not an architect; therefore, not permitted to contract to perform such services, and that the contract is void and unenforceable. The plaintiff claims that he is an engineer and as such is permitted to enter into a contract to render the services of an architect as provided for under the terms of said contract.

In the chapter of the Revised Code providing for the establishment of the profession of architecture and the licensing of architects under Section 4703.18, Revised Code, it is provided in part as follows:

"*No person shall enter upon the practice of architecture*, or hold himself forth as an architect or registered architect, unless he has complied with Sections 4703.01 to 4703.19, inclusive, Revised Code, and is the holder of a certificate of qualification to practice architecture issued or renewed and registered under such sections."

"Sections 4703.01 to 4703.19, inclusive, Revised Code, shall not prevent persons other than architects from filing applica-

tion for building permits or obtaining such permits, providing the drawings for such buildings are signed by the authors with their true appellation as engineer, contractor, carpenter, or other appellation, but without the use of any form of the title architect, nor shall it prevent such persons from designing buildings and supervising the construction thereof for their own use.''

''*Such sections shall not exclude a qualified or registered professional engineer from such architectural practice as may be incident to the practice of his engineering* profession; or exclude a registered architect from such engineering practice as may be incident to the practice of architecture.'' (Emphasis added.)

It will be noted that such section does not preclude an engineer from ''such architectural practice as may be incident to the practice of his engineering profession, or exclude a registered architect from such engineering practice as may be incident to the practice of architecture.''

The chapter establishing and providing for the licensing of professional engineers also has a provision prohibiting persons from practicing professional engineering without being registered or exempted in accordance with the provisions of said chapter, Section 4733.22, Revised Code.

Section 4733.17, Revised Code, in part reads as follows:

''Sections 4733.01 to 4733.23, inclusive, Revised Code, do not exclude a qualified or registered architect from such engineering practice as may be incident to the practice of his profession; or do not exclude a professional engineer from such architectural practice as may be incident to the practice of professional engineering.''

This is a reciprocal section permitting an architect to perform engineering work which is incidental to the practice of his profession.

It is pointed out by the plaintiff in his brief that Section 4733.01, Revised Code, defines the practice of engineering, which in part reads as follows:

''The practice of engineering includes any professional service, *such* as *consultation, investigation, evaluation, planning, design* or *responsible supervision* of *construction* or *operation, in connection with* any public or privately owned *public*

*utilities, structures, buildings,* machines, *equipment,* processes, works or *projects* in the proper rendering of which the *qualifications of Section 4733.11,* Revised Code *are required to protect public health, safety, and property."* (Emphasis added.)

The plaintiff bases his right to enter into a contract, which primarily calls for the services of an architect, by reason of this definition of engineering. It should be observed that this definition of the practice of engineering limits the practice to such functions of which the education qualifications are required "to protect the public health, safety, and property." It does not, and was not intended to, broaden the scope of such services to include the services flowing primarily from the practice of architecture.

The practice of architecture was defined in the case of *McGill* v. *Carlos,* 52 Ohio Law Abs., 28, 81 N. E. (2d), 726 (C. P., 1947), as follows:

"The word 'practice' as used in Section 1334-17, General Code, *means the exercise of a profession, and 'to enter upon the ppractice of architecture,' means to exercise the profession of an architect.* Primarily, an architect is a person who plans, sketches and presents the complete details for the erection, enlargement, or alteration of a building or other structure for the use of the contractor or builder when expert knowledge and skill are required in such preparation. The practice of architecture may also include supervision of construction under such plans and specifications. See Webster's New International Dictionary; The New Century Dictionary; 3 Ohio Jur., Sec. 1, page 115; *Kansas City Southern R. Co.* v. *Wallace,* 38 Okl., 233, 132 P., 908, 46 L. R. A. N., N. S., 112; 3 Amer. Jur. Sec. 2, page 998." (Emphasis added.)

In *Cudell* v. *Cleveland,* 16 C. C. (N. S.), 374 at 377, it is said: "An architect is an artist; his work requires taste and technical learning of a high and rare kind."

The plaintiff in his brief refers to the Code of Professional Practice by Ohio Society of Professional Engineers which provides:

"The Practice of Architecture and Engineering

"An architecture (sic) or engineer may ethically accept commissions for projects embracing both architectural and engineering work, *provided he is competent to do the type of*

*work involved, or provided he will employ other registered architects* or engineers who are competent in those phases of the projects in which he lacks proficiency.

"The client's interests normally are served best when the principal retained is proficient in the predominant work involved in the project. Recognition for their responsibility shall be granted to the architects or engineers executing separate phases of the project as associated of the principal." (Emphasis added.)

"Mutual Relations

"Architects and *engineers shall undertake to design only those phases of a project in which they are proficient* and shall retain professional associates for those parts in which they lack proficiency." (Emphasis added.)

The professional engineers thereby recognize that there is a basic distinction between architectural services, as such, and engineering services, as such. There is nothing in the contract providing that the engineer will employ a registered architect. The Court mentions this only because the plaintiff referred to it in his brief.

The plaintiffs also cite from an excerpt from the reply of the Attorney General, John W. Bricker (April 26, 1935), to the Honorable E. L. Bowsher, Director of Education, as follows:

"'* * * In view of my analysis of the two acts and because of the lack of clear cut legal definitions in either of the acts, it is difficult, by an advisory opinion, to give a categorical answer to the question you propound. However, since eventually the definitions of both the practice of architecture and the practice of professional engineering will have to be decided by court action where the opinions on this question of fact may be provided by adducing expert testimony from both professions, I would advise that in the meantime, since the line of demarcation between the two professions is not clear under the two acts, I can see no reason why a registered professional engineer should not be allowed to draw plans and prepare specifications for the purpose of erecting public school buildings and supervising the construction thereof."

The eventuality of this matter being decided by a court is now taking place. Is there a distinction between an architect and a professional engineer? Chapter 4703.01, Revised Code,

provides for the qualifications that one shall have before becoming an architect, and Section 4733.11, Revised Code, provides for the education qualifications that one shall have before he shall be licensed as a professional engineer. The education qualifications and the experience of one is vastly different from the other, although there is often an overlapping. In *Goldschlag* v. *Deegan*, 238 N. Y. S., Page 3, at pages 4 and 5 the Court said:

"Concededly a large part of the work of preparing for the construction of a modern multiple dwelling is actually done by persons who are generally called and who call themselves engineers, and concededly also such persons have in the past filed such plans as those here in question with the city authorities having supervision of such matters. And, while the respondent submits numerous affidavits designed to show that difficulties and confusion have arisen from the employment of engineers rather than architects, in the business of filing plans, the case made by the respondent in that respect is not convincing. It would not, I think, serve any useful purpose to discuss the numerous statutes regulating occupational services and the decisions they called into being. The architect of the future will probably be more of an engineer than of what was formerly known as an architect. But I think it may be safely said that, speaking of today, there are many elements of service in the preparation of plans for the construction of a building of whatever type, and the superintendence of construction, that may be more properly left to what we now know as an architect than to what we now know as an engineer. Certainly, an engineer is not to be presumed to be 'one who understands architecture.' 'Architect,' Century Dictionary. Nor is he to be presumed to be 'a skilled professor of the art of building.' 'Architect,' Murray's New English Dictionary. It is to be expected that the regents will shortly provide tests for the determination of what knowledge and experience a man must have in order to practice the profession of architecture. Until they lay down rules that would permit to act as an architect a man who makes no claim to being an architect, as that term is now universally understood, I think an engineer, as that term is now universally understood, may not hold himself out or act as an architect."

This overlapping was recognized by the legislature in Sec-

152

tion 4703.18, Revised Code, and Section 4733.17, Revised Code, when it provided that either profession may engage in the practice of the other as may be incident to the practice of his particular profession, and the legislature thereby recognized the distinction between the two professions and provided for it.

Is a professional engineer under our statutes entitled to enter into the general practice of architecture, and would an architect be permitted to enter into the general practice of engineering, and, if so, why did the legislature establish two separate professions? The legislature in establishing each of these professions recognized that they required a different educational background. The legislature also recognized that they have some things in common, and provided for this, and still recognize that each profession must be protected in its primary field of endeavor. It is the Opinion of this Court that the legislature intended to and did establish two separate professions, and intended to and did protect each of said professions in their respective fields of endeavor; that the legislature recognized that each of said professions have some things in common and that there is bound to be some overlapping, and the legislature provided for this. If the contract primarily called for the services of an architect, the engineer would be precluded from entering into such a contract.

The architect, as the above definitions indicate, may be more interested in art and beauty, and the engineer more to protect the public health, safety, and property, although they both would have an interest in all of these things. There would be times that the distinction between the work of an architect and that of an engineer would be definite and obvious, and other times perhaps when it would not be so definite and obvious.

In the instant case the contract calls for the building and construction of college buildings which primarily and predominantly call for the services of an architect and not such as are incidental to engineering. The court finds that the contract primarily calls for the services of an architect, although there may be some incidental engineering work involved. Therefore, the plaintiff, an engineer, would be precluded by virtue of the said sections of the statutes from entering into such a contract. The labelling of the contract "Agreement between Owner and Engineer" would not alter this situation since the primary

purposes of the contract call for the services of an architect and not an engineer. It is therefore the Opinion of this Court that the plaintiff cannot maintain his action against the defendant and therefore the demurrer of the defendant to the amended petition of the plaintiff should be sustained.